68444. ATLANTIC BUILDING SYSTEMS, INC. v. ATLANTIC STATES CONSTRUCTION COMPANY, INC. et al.
(322 SE2d 311)

SOGNIER, Judge.

Atlantic Building Systems, Inc. sued Atlantic States Construction Co., Inc. (ASC) under the alternative theories of express contract and quantum valebant to recover $66,476 for certain building materials it allegedly provided ASC. ASC counterclaimed in the amount of $49,163.71 as a set-off for undelivered or non-conforming materials and counterclaimed as well for Atlantic Building Systems' alleged tortious interference in ASC's business dealings with a third party. The jury returned a verdict in favor of ASC as to Atlantic Building Systems' entire claim. The jury also awarded ASC $275 on the tortious interference counterclaim. The trial court denied Atlantic Building Systems' motion for directed verdict and motion for judgment n.o.v. as to the tortious interference counterclaim. The trial court initially granted Atlantic Building Systems' motion for judgment n.o.v. as to the $17,312.29 difference between Atlantic Building Systems' claim and ASC's set-off counterclaim. However, upon ASC's motion for rehearing, the trial court vacated its earlier order in favor of Atlantic Building Systems and reinstated the jury verdict and judgment thereon. Atlantic Building Systems appeals.

1. Appellant contends the trial court erred by reinstating the jury verdict as to the $17,312.29 because the evidence was undisputed that appellant was not liable to appellee for that sum. Appellant points to the testimony of Edward Lawrence, a former project manager for appellee, who stated on cross-examination that appellee owed appellant the $17,312.29 as contract retainage. Pretermitting what would have been the effect of this admission had the jury decided the case on the contract claim, we hold that the jury was authorized under the pleadings and the evidence presented to find for appellee in the entire amount of $66,476 under the alternatively pled theory of quantum valebant.

Appellant argues as to the quantum valebant claim that the only evidence of value, other than its own witness' estimate, is that of a bid, higher than their own for the materials in controversy, so that even had the jury allowed for the set-off of $49,163.71 alleged by ap-

pellee's evidence, there still remained uncontroverted appellant's lack of liability for the $17,312.29 disparity between its $66,476 number and appellee's set-off number. Appellant, however, fails to take into consideration the testimony of its own witness who, after testifying as to his estimate of the reasonable value of the materials provided, stated on cross-examination that that estimate included a profit mark-up of 40%. "Quantum meruit (as much as the pleader deserved) or quantum valebant (as much as the work was worth) involves assumpsit, that is, the implied promise to pay for work and labor or goods sold and delivered." *Gilbert v. Powell*, 165 Ga. App. 504, 508 (301 SE2d 683) (1983). The measure of recovery under a contract implied in fact when goods or materials have been furnished or services have been rendered is the reasonable value thereof. OCGA § 9-2-7. "The only valid reason for lost profits necessarily finds its genesis in the contract itself. There being no [express] contract between the parties, there can be no lost profits." *Fonda Corp. v. Southern &c. Co.*, 144 Ga. App. 287, 293 (7) (241 SE2d 256) (1977). Because evidence was before the jury which authorized it to discount from appellant's evidence of reasonable value both the value of the undelivered and non-conforming materials plus 40% of appellant's figure as nonrecoverable lost profits (an amount which exceeds the alleged $17,312.29 disparity), we find no error in the jury's verdict.

2. Appellant contends the trial court erred by denying its motion for judgment n.o.v. or, alternatively, for a new trial as to the jury verdict on appellee's counterclaim for tortious interference with a contractual relation. Appellant argues that of the two items of evidence presented by appellee to support its counterclaim, (a) the testimony of Edward Lawrence as to a conversation held with a Max Kidd of Atlanta Metal Products was hearsay and without probative value and (b) the memo written by Ken Sellars, appellant's manager of field services, failed to demonstrate the requisite purposeful interference by appellant.

(a) Lawrence testified that Kidd stated in a telephone conversation that his company, Atlanta Metal Products, would not sell certain roofing materials to appellee because if it did, he had been informed by appellant that appellant would not pay the $50,000 it owed Atlanta Metal Products on an unrelated contract. This evidence was admitted under OCGA § 24-3-2 as an exception to the hearsay rule to explain why appellee, rather than buying materials needed to complete its construction project direct from the manufacturer (Atlanta Metal Products), instead circuitously obtained the needed materials from an intermediary, occasioning a delay of several weeks in the completion of the project. The trial court correctly admitted this testimony with appropriate instructions to the jury. See *Allen v. Brookshire*, 169 Ga. App. 391, 392 (3) (312 SE2d 862) (1984). After the ba-

sic details of this conversation were elicited by counsel for appellee, appellant's counsel on cross-examination solicited more detail on the telephone conversation from Lawrence and later called, in direct rebuttal to Lawrence's version of the conversation (not in rebuttal to the action appellee took as a result of that conversation) two officers of Atlanta Metal Products, Kidd and Dale Galon, who denied ever making such statements or that appellant had ever threatened them in such a manner. We note that testimony by William Mott, appellee's president, on surrebuttal stating that he had been a party to the conversation along with Lawrence and had been told by Kidd of the threat from appellant, was admissible to impeach the testimony that no such comment had been made. *Prescott v. Carithers*, 158 Ga. App. 366, 368 (4) (280 SE2d 361) (1981).

(b) Appellant argues that the memo written by Sellars ten days prior to the expiration date of appellant's exclusive purchasing contract with Atlanta Metal Products was not sufficient by itself to prove appellant intentionally and maliciously interfered with appellee's business relation with Atlanta Metal Products. The memo stated: "They [appellee] are attempting and/or threatening to buy the material and have Atlanta Metal Products make the replacement panels for them. *First I would like to do everything in our power to prevent Atlanta Metal Products from providing the replacement panels for this job.*" [Emphasis supplied.]

"The intentional and non-privileged interference by a third party with existing contractual rights and relations constitutes a tort for which an action shall lie. [Cits.]" *McDaniel v. Green*, 156 Ga. App. 549, 550 (275 SE2d 124) (1980). "In order to constitute a tort a third person must have maliciously and without lawful justification induced the breach of an existing contract or caused the termination of a recognized contractual relation." 27 EGL Torts, § 9. " '[T]he term 'malicious' or 'maliciously' means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential.' [Cits.]" *Nager v. Lad 'n Dad Slacks*, 148 Ga. App. 401, 404 (251 SE2d 330) (1978).

Although the memo evidence did not demand judgment in appellee's favor, it presented some evidence from which a reasonable inference of actual interference could have been drawn. " ' "On consideration of an [appeal from] the denial of a motion for a judgment non obstante veredicto, the question before this court is not whether the verdict and judgment of the trial court was merely authorized, but is whether a contrary judgment was demanded. . . ." ' " [Cit.] " ' "In giving consideration to a motion for judgment notwithstanding the verdict the court is concerned substantially with the same principles of law as are applicable upon consideration of the motion for directed verdict. . . . The question for determination is whether or not the ev-

idence demands a verdict for movant [cits.] and if there be any evidence to support the verdict returned denial of the motion is proper and grant would constitute error [cits.]." ' [Cits.]" *Simon v. McGee Plumbing &c. Co.*, 164 Ga. App. 667, 668-669 (2) (299 SE2d 388) (1982). "In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts. [Cit.]" *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238) (1981). The memo from appellant's manager, together with the above testimony, constituted some evidence to support the verdict of the jury. Since all of the evidence did not demand a verdict for defendant/appellant, the trial court did not err by denying the motion for judgment n.o.v. and motion for new trial. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (256 SE2d 916) (1979).

*Judgment affirmed. McMurray, C. J., and Deen, P. J., concur.*

DECIDED SEPTEMBER 6, 1984 —
REHEARING DENIED SEPTEMBER 19, 1984.

*Elmer A. Simpson, Jr., Francis C. Schenck*, for appellant.
*Joseph R. Manning, Jeffrey C. Baxter*, for appellees.