No. 88-457

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

PHILLIP R. MORROW, INC., and
PHILLIP MORROW,

       Plaintiffs and Appellants,

  -vs-

FBS INSURANCE MONTANA-HOINESS LABAR, INC.,
a Montana corporation,

       Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Holland & Hart; James M. Ragain and Kyle Anne Gray,
Billings, Montana

    For Respondent:

        Gerald B. Murphy and T. Thomas Singer, Billings,
Montana

Submitted on Briefs: Jan. 12, 1989

Decided: March 9, 1989

Filed

FILED
'89 MAR 9 AM 11 06
ED SMITH, CLERK
MONTANA SUPREME COURT

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This action from the Thirteenth Judicial District, Yellowstone County, for intentional interference with prospective economic advantage and intentional infliction of emotional distress, is before this Court for the second time. The first appeal involved the District Court's decision to grant the motion for summary judgment made by respondent FBS Insurance Montana-Hoiness Labar, Inc., (FBS). We reversed. Morrow v. FBS Insurance (Mont. 1988), 749 P.2d 1073, 45 St.Rep. 188. This appeal concerns the District Court's decision to grant FBS's motions for directed verdicts. The District Court decided that Morrow failed to present evidence to establish a prima facie case for either tort claim. We reverse on the interference claim and affirm on the claim for intentional infliction of emotional distress. The District Court further decided Morrow failed to come forward with facts sufficient to justify submission to the jury of his claim for punitive damages. We reverse the lower court on this issue.

The earlier opinion contains an extensive fact statement. Facts relevant to this appeal can be summarized as follows: Morrow, a plumbing contractor, alleged that FBS, acting as a bonding agent, prevented a general contractor from accepting his bid for a major mechanical subcontract. Fisher Construction, (Fisher), the general contractor involved, planned to submit a bid for the construction of a water plant. Morrow submitted a bid to Fisher for the mechanical portion of the job.

FBS had agreed to act as Fisher's bonding agent, and requested at some point that Fisher back-bond major subcontractors. FBS would not agree to bond Morrow. Morrow

was aware that FBS would not provide him a bond prior to Fisher's award of the subcontract. Morrow told Fisher that a different bonding agent would bond his work for the subcontract.

Morrow and another subcontractor, Star Services, (Star), were the two low bidders for the mechanical subcontract. Fisher met with the two low bidders to discuss cost cutting measures to reduce Fisher's bid on the entire project. Fisher awarded the subcontract to Star.

Morrow's suit for interference alleged that personal dislike and prior financial dealings between Morrow and FBS motivated FBS to apply the pressure. FBS responded that it did not apply pressure on Fisher.

Dan Fisher and Alf Hulteng, agents of Fisher, testified that Star received the contract because they bid lower than Morrow. They also testified FBS did not pressure them to refuse Morrow's bid. Morrow testified that Dan Fisher and Hulteng told him Star received the contract because FBS pressured Fisher.

Hulteng testified that it was possible he told Donna Morrow that FBS's employee Kip Vanderverter disliked Morrows. Donna Morrow testified that Vanderverter once inquired whether FBS would be providing a bond for work done by Morrow in 1982. She stated that when she informed Vanderverter that Morrow would be bonding with another company, Vanderverter ended the conversation abruptly, and that she feared he had been angry.

A conflict in the evidence exists as to which subcontractor bid lowest. Hulteng testified that Morrow's bid appeared lowest, but that he wanted to make sure Morrow had included costs for the clearwell piping portion of the job. Hulteng called Morrow and Morrow told Hulteng he included the clearwell costs in his bid. Hulteng testified

3

that a scope sheet detailing the figures Morrow used to calculate his bid showed Morrow omitted the clearwell portion. Morrow testified his scope sheet did not show that he omitted the clearwell portion.

Morrow raises the following issues:

(1) Did the trial court err by granting FBS's motion for a directed verdict on the claim of intentional interference with prospective economic advantage?

(2) Did the trial court err by granting FBS's motion for a directed verdict on the claim of intentional infliction of emotional distress?

(3) Did the trial court err by ruling on the issue of punitive damages before submitting the case to the jury?

I.

The trial court concluded that the jury could consider testimony by Morrow that Hulteng and Dan Fisher told Morrow that FBS pressured Fisher only as impeachment evidence. Clearly, this is not the rule on prior inconsistent statements admitted under Rule 801(d)(1)(a) M.R.Evid.:

> Prior inconsistent statements traditionally have been admissible to impeach but not as substantive evidence. Under the rule they are substantive evidence.

Commission Comments, Rule 801(d)(1)(a), M.R.Evid. This Court has previously agreed with the Commission on this point. State v. Fitzpatrick (1980), 186 Mont. 187, 606 P.2d 1343.

FBS argues that the District Court should be affirmed on other grounds. First, FBS argues that the trial court correctly distinguished Fitzpatrick because Morrow's statement contains two hearsay declarations. Therefore,

4

according to FBS, the trial court correctly excluded the testimony because the second statement does not come under any exception to the hearsay rule. We agree that Morrow's statement arguably contains two statements. The testimony could be characterized as "Dan Fisher told me Kip Vandeverter told him, 'don't do business with Morrow'". Under similar circumstances, this Court has held such statements to come under the proscriptions of Rule 805. The rule requires that each statement fall under an exception to the general prohibition of proof by hearsay. State v. Martinez (1983), 188 Mont. 271, 613 P.2d 972.

We disagree, however, that Rule 805 excludes the testimony. The trial court should have admitted the second statement as non-hearsay under Rule 801(c), M.R.Evid., because the statement constitutes a "verbal act", in the sense that it goes to prove the operative facts of the alleged tort, i.e., pressuring Fisher. Weinstein comments on statements admitted under the verbal act doctrine as non-hearsay under Rule 801(c), as follows:

> Although Morgan objected that the phrase "verbal act ... as commonly used, is less vague than res gestae only because it is couched in English, instead of Latin," commentators and courts today appear united in limiting the phrase to one particular aspect of nonhearsay utterances. It is applied, when as in the case of the defamation examples above, the utterance is an operative fact which gives rise to legal consequences.
> For instance, in Creaghe v. Iowa Home Mutual Casualty Co. [323 F.2d 981 (10th Cir. 1963)], plaintiff, who had recovered a judgment as yet unsatisfied against one Osborn in an earlier action stemming from an automobile accident, now brought an action against Osborn's alleged insurer at the time of the accident. The insurer asserted that the policy had been cancelled shortly before the accident. Its agent (W) testified to statements by Osborn (D) requesting cancellation. Plaintiff

objected that this testimony was hearsay. The court disagreed: "The hearsay rule does not exclude <u>relevant</u> testimony as to what the contracting parties said with respect to the making or the terms of an oral agreement. The <u>presence</u> or <u>absence</u> of such words and statements of themselves are part of the issues in the case. This use does not require a reliance by the jury or the judge upon the competency of the person who originally made the statements for the truth of their content. . . ."

4 J. Weinstein, M. Berger, Weinstein's Evidence ¶ 801(c)[01] at 801-71-72 (1988)(emphasis added). An approximation of the application of this rule in a business interference claim may be found in Atlantic Building Systems v. Atlantic States Construction (Ga.App. 1984), 322 S.E.2d 311. In <u>Atlantic Building Systems</u>, the plaintiff allegedly threatened to forgo paying a debt owed to a third party if the third party sold goods to the defendant. The defendant's counterclaim alleged the threats constituted tortious interference. An employee of the third party testified to the declarations constituting the threats. The appeals court affirmed the decision to allow the testimony because the defendant introduced the declarations to prove its inability to purchase goods from the third party. The court relied on Georgia's <u>res gestae</u> statute for authority in admitting the declarations. <u>Atlantic Building Systems</u>, 322 S.E.2d at 313.

Montana law requires that statements admitted under the <u>res gestae</u> rule be made under circumstances where reflection and fabrication are unlikely. State v. Collins (1978), 178 Mont. 36, 582 P.2d 1179. The statement must occur at the time the excitement of the circumstances motivated the utterance. State v. Fairburn (1959), 135 Mont. 449, 340 P.2d 157. The statements here do not meet these tests.

However, where the issue is the existence of statements, not the truth of the matters asserted within them, Montana

6

recognizes the verbal act doctrine. Collins, 582 P.2d at 1183. Under the verbal act doctrine in Montana, statements may be admitted "for the purpose of establishing the fact that the words had been said by defendant." Collins, 582 P.2d at 1183. Threats may constitute verbal acts. United States v. Stratton (2nd Cir. 1985), 779 F.2d 820, 830. The second set of statements in Morrow's testimony go to proving the existence of statements made by Vanderverter. The existence of the statements constitutes the operative fact of this particular action. They are admissible to prove the existence of acts by Vanderverter to pressure Dan Fisher and Hulteng, not for the truth of matters asserted within them. See 6 J. Wigmore, Wigmore on Evidence § 1774 (Chadbourn Rev. 1976)(citing Caplan v. Caplan (N.H. 1928), 142 A. 121, 124); and see Tocco v. Great Falls (Mont. 1986), 714 P.2d 160, 43 St.Rep. 310. Thus, the statements may be properly admitted as non-hearsay evidence under Rule 801(c), M.R.Evid.

The lower court also relied on Rule 403, M.R.Evid., to exclude consideration of Morrow's testimony ruling that the second hand nature of the testimony would mislead the jury, cause confusion, and result in unfair prejudice. The lower court held that these factors outweighed the probative value of the testimony.

Rule 403, M.R.Evid., allows an objection to admission of confusing and misleading evidence. Trial courts must balance the probative value of evidence against the possibility that the evidence will confuse or mislead the jury. Here, Morrow's testimony is crucial to his case, therefore its probative value, for the purpose of applying Rule 403, M.R.Evid, is high. Wigmore comments that exclusion for confusion is an "extreme measure" not properly used:

> unless either the evidential material was necessarily and thoroughly objectionable or else was of minor utility and could be easily sacrificed; [moreover] nor should the exclusion be an absolute one, unless a conditional or temporary exclusion would not suffice for the purpose.

6 J. Wigmore, Wigmore on Evidence § 1864 (Chadbourn Rev. 1976). The evidence here is in no sense thoroughly objectionable and its utility to Morrow is great. Therefore, it was not properly excludable under Rule 403, M.R.Evid.

The lower court also relied on Rule 602, M.R.Evid., to exclude Morrow's testimony. The lower court apparently reasoned that Morrow had no personal knowledge of the matters he testified to in connection with the statements made by Dan Fisher and Hulteng. Rule 602, M.R.Evid., requires witnesses to have personal knowledge of matters embraced within their testimony. Morrow contends that the lower court erred because Rule 602:

> is subject to the hearsay rule. If a witness is testifying to what he heard he may do so unless what he heard is excluded under the hearsay rules of Article VIII. The witness' testimony may even contain hearsay within hearsay. See Rule 805. There is no inconsistency between Rule 602 and the hearsay rules since the "matter" he is testifying to is what he heard rather than the event described by the hearsay declarant.

3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 602 [01] at 602-04. On this point the Commission on Evidence agrees:

> The exceptions stated in Section 93-401-2 [superseded], opinions and hearsay, are intended to apply to this rule.

Commission Comments, Rule 602, M.R.Evid. The Court in Stratton explained the rule in the context of statements alleged to be hearsay within hearsay:

> [A]ppellants misconceive the nature of the personal knowledge requirement, see Fed.R.Evid. 602, in the hearsay context. When A testifies that B told him of an event, A usually has personal knowledge only of B's report. It is B who has personal knowledge of the event. Thus, the hearsay rules require that the declarant, B in our example, have personal knowledge of the events recounted, not that the witness have such personal knowledge. See United States v. Lang, 589 F.2d 92, 98 (2d Cir. 1978). Thus, Farber could have testified to Stratton's report of the threats because the threats were within the personal knowledge of Stratton. Nor is there a hearsay within hearsay problem. Stratton's report of threats to Farber, his chief assistant, is not hearsay because it is a statement of a co-conspirator in furtherance of the conspiracy, . . .

Stratton, 779 F.2d at 829-30. We hold that the analysis from Stratton provides the correct holding on the interaction of the hearsay rules with the personal knowledge requirement as applied to the facts of this case. Thus, Rule 602, M.R.Evid., does not operate to exclude Morrow's testimony.

The lower court also held that Rule 701, M.R.Evid., mandated exclusion of Morrow's testimony. Rule 701 requires that opinions and inferences from the testimony of lay witnesses be rationally based on the witnesses' perceptions, and that the opinions and inferences further a clear understanding of the witnesses' testimony or the determination of the facts at issue. Rule 701, M.R.Evid.

Morrow argues that Rule 701 does not apply because Morrow's testimony contains no opinions. FBS responds that the opinion at issue is whether acts of FBS constituted pressure on Dan Fisher or Hulteng to avoid awarding the subcontract to Morrow. FBS also contends that it is impossible to ascertain who of the witnesses formed the opinion that pressure existed.

9

Testimony in the record reveals that Dan Fisher and Hulteng had opinions as to what is meant when someone is "pressuring" another to do something in a particular manner. They also testified that FBS exerted no pressure to prevent hiring Morrow. These perceptions, as well as the perception introduced through Morrow's testimony on the presence of pressure, may be properly admitted as questions concerning "'various mental and moral aspects of humanity, such as disposition and temper, anger, fear, excitement, intoxication, veracity, general character, and particular phases of character, and other conditions and things, both moral and physical, too numerous to mention.'" Commission Comments, Rule 701, M.R.Evid. (quoting State v. Trueman (1906), 34 Mont. 249, 85 P. 1024). Thus, no issue exists here under Rule 701, M.R.Evid.

The District Court also concluded that even if Morrow's evidence were admissible, no prima facie case existed because Morrow failed to present evidence that FBS improperly interfered with selection of the subcontractor. Morrow argues the lower court erred because evidence demonstrated that Vanderverter pressured Fisher because he disliked Morrows. Morrow also argues that justification for interference must be pleaded under Rule 8(c), M.R.Civ.P., as an affirmative defense citing Phillips v. Montana Education Association (1980), 187 Mont. 419, 610 P.2d 154.

In Phillips, plaintiff claimed defendant induced breach of an existing contract. Phillips, 610 P.2d at 156. This Court, in analyzing the tort, stated:

> Generally, an intentional interference with the existing contractual relations of another is prima facie sufficient for liability and the burden of proving that it is "justified" rests upon the defendant.

10

Phillips, 619 P.2d at 157.  This view accords with Prosser who comments:

> The early cases, with their emphasis upon "malice," regarded proof of an improper motive as an essential part of plaintiff's cause of action.  As the tort became more firmly established, there was a gradual shift of emphasis, until today it is generally agreed that an intentional interference with the existing contractual relations of another is prima facie sufficient for liability, and that the burden of proving it is "justified" rests with the defendant.

W. Prosser, Law of Torts § 129 at 942 (4th ed. 1971). However, in Montana, a showing that the defendant acted without right or justification is part of the plaintiff's prima facie case in an action for intentional interference with prospective business advantage.  Bolz v. Meyers (1982), 200 Mont. 286, 651 P.2d 606.  Affirmative defenses generally concern the pleading of matter outside the plaintiff's prima facie case.  2A J. Moore, Moore's Federal Practice § 8.27 (2d ed. 1982).  Morrow's complaint alleged intentional interference with prospective business advantage.  FBS answered generally denying the allegation.  A general denial puts every material allegation in dispute.  Thus, no issue under Rule 8(c), M.R.Civ.P., exists.

In the first opinion we stated that evidence from discovery created a material fact question on whether FBS acted improperly in allegedly interfering with the subcontract.  Morrow, 749 P.2d at 1076.  Similarly here, the jury could find from the evidence introduced at trial that FBS's alleged actions were motivated without right or justification.  In addition to evidence showing that FBS may have a "legitimate" financial interest in forcing Fisher to select certain subcontractors, evidence indicated FBS may

11

have been motivated to avenge for imagined wrongs in previous dealings. Evidence also inferred that the alleged pressure could have been fueled by Vanderverter's personal dislike of Morrows. The jury may or may not consider this to be weak evidence that FBS acted without privilege or justification in allegedly interfering. However, in granting a motion for a directed verdict, the evidence must be viewed in a light most favorable to the party opposing the motion. Nicholson v. United Pacific Ins. Co. (Mont. 1985), 710 P.2d 1342, 42 St.Rep. 1822. Viewing the evidence in a light most favorable to Morrow, we hold that the evidence supports a prima facie case of intentional interference with prospective business advantage.

## II.

We agree with the District Court that Morrow failed to make out a prima facie case for intentional infliction of emotional distress. This Court has yet to recognize the tort in Montana. Frigon v. Morrison-Maierle, Inc. (Mont. 1988), 760 P.2d 57, 45 St.Rep. 1344. In Frigon we affirmed the District Court's decision that no material fact question existed on plaintiff's claim for intentional infliction of emotional distress because the defendant's actions in denying her a raise failed to amount to conduct beyond all possible bounds of decency. Frigon, 760 P.2d at 64. Thus, while we have yet to decide under what facts we will recognize the tort, we have at least decided some situations where we will not. No facts here demonstrate extreme and outrageous conduct. Thus, we affirm the District Court's decision that Morrow did not make out a prima facie case for intentional infliction of emotional distress, and dismissal of the claim is appropriate. First Bank Billings v. Clark (Mont. 1989), ___ P.2d ___, 46 St. Rep. 291.

12

### III.

Our decision to remand for a new trial raises the issue of whether the lower court properly concluded Morrow failed to present evidence sufficient to submit his claim for punitive damages to the jury. The applicable portion of § 27-1-221(5), MCA (1985), provides for punitive damages for oppression where a defendant:

> intentionally causes cruel and unjust hardship by
>
> (a)   misuse or abuse of authority or power; or
>
> (b)   taking advantage of some weakness, disability, or misfortune of another person.

Morrow argues that FBS knew that Morrow needed the subcontract to avoid financial ruin, and that the jury could find FBS intentionally took advantage of Morrow's financial disability to cause cruel and unjust hardship on Morrow. We agree that under the above subsection Morrow presented sufficient evidence to go to the jury on this issue. We reverse for a new trial in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

13

William E. Hunt Sr.

Justices

14