DA 13-0772

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 264

IN THE MATTER OF THE ESTATE OF:

ROBERT LEE MEAD,

      Deceased

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DP 11-21
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jack H. Morris; Morris Law Firm; Helena, Montana

      For Appellee:

          Jeffrey W. Dahood; Knight, Dahood, Everett & Sievers; Anaconda, Montana

Submitted on Briefs: August 6, 2014

Decided: September 30, 2014

Filed:

          _____
                   Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Roberta Jean Mead appeals the Third Judicial District Court's order awarding summary judgment to Bobbi Jo Harr in a dispute over their father's will.

¶2 We address the following issues on appeal:

¶3 *1. Whether the court correctly concluded that the will was properly executed.*

¶4 *2. Whether the court correctly concluded that Roberta Jean Mead failed to present sufficient evidence to establish undue influence.*

¶5 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 Robert Lee Mead (Robert) died on September 17, 2011. His daughters, Roberta Jean Mead (Roberta) and Bobbi Jo Harr (Bobbi Jo), survived him. Roberta and Bobbi Jo are half-sisters, born to different mothers.[1] After Robert's death, Roberta initiated intestate proceedings, but Bobbi Jo petitioned for formal probate of Robert's purported will.

¶7 The will is dated July 18, 2011. Robert's long-time neighbor Teryl Rouse (Teryl) wrote its contents by hand. The will reads as follows:

> On this date 7-18-2011 – I am here with my neighbor of over 30 years – Robert Mead (Bob) – I am here to write down his last "will" – He is in good spirits, alert and sound of mind. On this date Bob has asked me to write down the desires he has in regards to his earthly possessions. "I (Bob) Robert Mead do will <u>all</u> my earthly possessions to my daughter Bobbi Jo Harr that lives in California, she can do with them what she likes."

---

[1] Bobbi Jo's birth certificate does not list Robert as her father. Roberta admitted in her deposition, however, that Bobbi Jo is Robert's daughter.

¶8 Teryl and her husband Ralph Rouse (Ralph) each signed as "witnesses" and dated their signatures "7/18/2011" near the bottom of the will; Robert's name and signature appear beneath the Rouses' signatures.

¶9 Ralph died before proceedings in this case occurred, leaving Teryl as the will's only surviving signatory. Teryl testified that, in July 2011, Robert talked to her about preparing his will. Robert was suffering from soon-to-be diagnosed terminal cancer and had just returned from the hospital. He asked Teryl to come over to his house and help prepare a will. Teryl came over and Robert handed her a piece of paper, explaining that he could not write the will himself because his hand was too shaky. Medical records show that Robert was prescribed hydrocodone at the time. Teryl wrote the part of the document not in quotation marks at her own bidding. Robert dictated the part of the document in quotation marks and Teryl wrote the dictation word-for-word.

¶10 After completing the document, Robert and Teryl signed it. Teryl suggested that she should get her husband Ralph to sign the document also, and Robert agreed. Teryl went and got Ralph. According to Teryl, after Ralph arrived he looked at the will and said, "[S]o [Teryl] wrote your will; did she sign it too?" Robert then responded, "[N]o; that's my shaky handwriting." Ralph then signed the will.

¶11 After discovery, Roberta and Bobbi Jo filed cross-motions for summary judgment about the will's validity and enforceability. Concluding that the will is valid and enforceable, the District Court denied summary judgment for Roberta and granted judgment in favor of Bobbi Jo.

¶12   In its October 16, 2013 Memorandum and Order, the District Court addressed three issues.  First, the court determined that there was no issue of material fact about the execution of the will and that the will was properly executed as a matter of law.  Second, the court ruled that Roberta failed to raise a genuine issue of material fact showing that Robert lacked testamentary capacity.  Third, the court ruled that Roberta failed to raise a genuine issue of material fact about undue influence.

¶13   Roberta challenges the District Court's grant of summary judgment to Bobbi Jo.

**STANDARD OF REVIEW**

¶14   We review a district court's ruling on a motion for summary judgment de novo, using the standards set out in M. R. Civ. P. 56.  *Bailey v. St. Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149.  We also apply de novo review to a district court's evidentiary rulings made while resolving a motion for summary judgment. *In re Estate of Harmon*, 2011 MT 84, ¶ 14, 360 Mont. 150, 253 P.3d 821.  If the moving party establishes an absence of a genuine issue of material fact and entitlement to judgment as a matter of law, the non-moving party must present substantial evidence raising a genuine issue of material fact.  *Smith v. Burlington N. & Santa Fe Ry. Co.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639.  Although a court draws all reasonable inferences from the evidence in favor of the non-moving party, *Yellowstone II Dev. Grp., Inc. v. First Am. Title Ins. Co.*, 2001 MT 41, ¶ 32, 304 Mont. 223, 20 P.3d 755, its consideration is limited to admissible evidence; a court does not consider conclusory

statements lacking specific factual support in the record. *PPL Mont., LLC. v. State*, 2010 MT 64, ¶ 84, 355 Mont. 402, 229 P.3d 421.

## DISCUSSION

¶15　In Montana, any adult of sound mind may make a will. Section 72-2-521, MCA. To be valid and enforceable, the will must be properly executed and not be the result of undue influence. Section 72-3-310, MCA. Roberta argues that Robert's will was not properly executed and was the result of undue influence.

¶16　*1. Whether the court correctly concluded that the will was properly executed.*

¶17　To be valid, an executed will must generally be (1) in writing, (2) signed by the testator, and (3) signed by two witnesses. Section 72-2-522(1), MCA. A valid witness signature is present when the witness "signed within a reasonable time after having witnessed either the signing of the will . . . or the testator's acknowledgement of that signature or acknowledgement of the will." Section 72-2-522(1)(c), MCA.

¶18　Robert's will satisfies the first two execution requirements: it was in writing and Robert signed it. Roberta argues that the document does not satisfy the third requirement, however, because it lacks a second valid witness signature. Roberta does not dispute that Teryl's signature qualifies as a valid witness signature, but argues that Ralph's does not.

¶19　To Roberta's point, Ralph indeed did not witness Robert signing the will. Ralph came over to Robert's house after Robert signed it. But a witness does not necessarily have to witness the testator signing the will. It is also proper to witness the testator's acknowledgment of his signature or of the will. Section 72-2-522(1)(c), MCA.

5

¶20 Bobbi Jo argues that the evidence demonstrates that Ralph witnessed Robert's acknowledgment of his signature on the will. Teryl testified that when Ralph came over to Robert's house, Ralph asked Robert whether the signature on the will was Teryl's, and Robert responded by stating, "[N]o, that's my shaky handwriting." Robert's statement identified and acknowledged his signature on the document. Ralph signed shortly after that acknowledgment. Robert's statement, then, establishes Ralph's signature as a valid witness's signature, and establishes the will as properly executed.

¶21 Although the District Court concluded as much, Roberta argues that the court improperly considered Robert's statement. Roberta points out that, at the summary judgment stage, a court may consider only evidence that would be admissible at trial. *Alfson v. Allstate Prop. and Cas. Ins. Co.*, 2013 MT 326, ¶ 11, 372 Mont. 363, 313 P.3d 107. Roberta argues that the statement is not admissible because it is hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless an exception applies. M. R. Evid. 801(c), 802.

¶22 Robert's statement is indeed an out-of-court statement, but it is not offered to prove the truth of the matter asserted. Bobbi Jo offers the statement to prove that Robert acknowledged his signature. She does not offer the statement to prove what the statement asserted—that Robert was pointing to his own handwriting when he made the statement, or that Robert's handwriting was actually shaky. Those facts are immaterial.

¶23 Where the issue is the existence of a statement, not the truth of the matter asserted, Montana recognizes the verbal act doctrine. *Phillip R. Morrow, Inc. v. FBS Ins.*

6

*Montana-Hoiness Labar, Inc.*, 236 Mont. 394, 399, 770 P.2d 859, 862 (1989). The verbal act doctrine applies when an out-of-court statement "is an *operative fact* which gives rise to legal consequences." *Morrow*, 236 Mont. at 398, 770 P.2d at 861 (emphasis in original). Under the verbal act doctrine, "statements may be admitted 'for the purpose of establishing the fact that the words had been said by the [declarant].'" *Morrow*, 236 Mont. at 399, 770 P.2d at 862 (quoting *State v. Collins*, 178 Mont. 36, 44, 582 P.2d 1179, 1183 (1978)).

¶24    Here, what is material is the existence of Robert's statement acknowledging his signature. The statement's status as an acknowledgment is an operative fact because legal consequences flow from the fact's existence. *Black's Law Dictionary*, 710 (Bryan A. Garner ed., 10th ed. 2014) (defining an operative fact as a "fact that affects an existing legal relation, esp. a legal claim."). The consequences are that Ralph signed after witnessing the acknowledgment, thereby rendering Ralph's signature a valid witness signature. As such, the document is rendered a properly executed will.

¶25    We hold that the District Court properly considered Teryl's testimony about Robert's statement and correctly awarded summary judgment to Bobbi Jo on the issue of the will's execution. There is no dispute of material fact, and Bobbi Jo is entitled to judgment as a matter of law that the will was executed.

¶26    *2. Whether the court correctly concluded that Roberta failed to raise a genuine issue of material fact about undue influence.*

¶27    The party contesting a will bears the burden of establishing undue influence. Section 72-3-310, MCA. Undue influence consists of:

7

(1) the use by one in whom a confidence is reposed by another person or who holds a real or apparent authority over the other person of the confidence or authority for the purpose of obtaining an unfair advantage over the person;
(2) taking an unfair advantage of another person's weakness of mind; or
(3) taking a grossly oppressive and unfair advantage of another person's necessities or distress.

Section 28-2-407, MCA. To establish undue influence, a party must present "specific acts" showing that "undue influence actually was 'exercised upon the mind of the testator directly to procure the execution of the will.'" *Harmon*, ¶¶ 21-22 (quoting *In re Estate of Wittman*, 2001 MT 109, ¶ 21, 305 Mont. 290, 27 P.3d 35). A court should consider the opportunity for undue influence, including the testator's susceptibility to influence, and whether the disposition of property was natural. *In re Estate of Harms*, 2006 MT 320, ¶ 21, 335 Mont. 66, 149 P.3d 557. But "[m]ere suspicion that undue influence may have or could have been brought to bear is not sufficient." *Wittman*, ¶ 21.

¶28 The District Court ruled that Roberta failed to raise a genuine issue of material fact about undue influence. On appeal, Roberta argues that she raised a fact issue because (1) Bobbi Jo's birth certificate does not list Robert as Bobbi Jo's father, which suggests that the disposition of property to Bobbi Jo was unnatural, and (2) medical records show that Robert was taking heavy medication at the time of the will's execution, which shows that he was susceptible to undue influence.

¶29 We agree with the District Court that Roberta's evidentiary submissions fall short for three reasons. First, although Roberta presents evidence that Robert was on medication, she fails to present substantial evidence that Robert was affected by that

8

medication such that he was weak of mind. In her affidavit, Roberta states that, in 2011, she "became concerned regarding [Robert's] mental capacity and noticed he was starting to fail." As we have observed, "[g]eneral allegations of poor health are not sufficient to show undue influence." *Harmon*, ¶ 22.

¶30 Second, that Robert is not listed on Bobbi Jo's birth certificate does not prove undue influence, particularly in light of Roberta's admission that Robert was Bobbi Jo's father.

¶31 Most importantly, Roberta fails to point to evidence of "specific acts" of undue influence. *Harmon*, ¶ 21. Roberta provides no evidence of any party actually using "confidence or authority" over Robert, or taking "unfair advantage" of Robert's "weakness of mind" or "distress." Section 28-2-407, MCA. She does not specify who she believes unduly influenced Robert. Roberta instead points to evidence that perhaps could raise a suspicion of undue influence. But "mere suspicion" is not enough for Roberta to satisfy her burden. *Wittman*, ¶ 21. "Specific acts" are an essential element of Roberta's claim, *Harmon*, ¶ 21; evidence bearing on Robert's mental state and kinship with Bobbi Jo is not evidence of "specific acts."

¶32 When a party who carries the burden of production on a claim fails to make a showing sufficient to establish the existence of an essential element of that claim, there is no genuine issue of material fact. *See Harmon*, ¶ 47. The law placed on Roberta the burden of establishing undue influence. Section 72-3-310, MCA. To meet that burden, Roberta "was required to present admissible evidence of specific acts of undue influence

9

. . . ." *Harmon*, ¶ 21. Because she failed to do so, she did not raise a triable issue of fact. The District Court correctly awarded summary judgment to Bobbi Jo on this issue.

## CONCLUSION

¶33 Because the will was properly executed and not the result of undue influence, the District Court was correct to conclude that the will is valid and enforceable. We affirm the District Court's October 16, 2013 Memorandum and Order and its judgment in favor of Bobbi Jo. We remand for further proceedings consistent with the will.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA