NO. 94-480

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

JEFFREY FARRINGTON,

    Plaintiff and Appellant,

  v.

BUTTREY FOOD AND DRUG STORES
COMPANY, a Delaware corporation,

    Defendant and Respondent.

FILED

JUL 25 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Charles S. Lucero, Attorney at Law, Great Falls,
        Montana

        Michael J. Best; Best Law Offices, Great Falls,
        Montana

    For Respondent:

        Neil E. Ugrin, Gary M. Zadick; Ugrin, Alexander,
        Zadick & Higgins, Great Falls, Montana

Submitted on Briefs:  June 16, 1995

Decided:  July 25, 1995

Filed:

*Ed Smith*

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Jeffrey Farrington (Farrington) appeals from the **August 22,** 1994, order of the Eighth Judicial District Court, Cascade County, granting Buttrey Food and Drug Stores Company's (Buttrey) motion for summary judgment. We reverse.

Farrington was a deliveryman for Pennington's, Inc., a wholesale distribution company. Pennington's serviced, among other customers, Buttrey stores in Great Falls. Once a Pennington's delivery person checked goods into Buttrey, the goods became Buttrey property. If a product became out of date or damaged, Pennington's replaced the item without charge or issued a credit to Buttrey.

On March 15, 1991, Farrington was observed allegedly throwing a box containing approximately twelve bags of potato chips into the trash compactor at Buttrey's west Great Falls store. Buttrey alleges that the box contained three bags of good potato chips (not damaged or expired) and that Farrington failed to properly credit Buttrey. Farrington acknowledged in signed handwritten and typed statements and in deposition that he had destroyed property of Buttrey without giving Buttrey credit. As a result of the incident, Buttrey revoked Farrington's privilege to service its stores but allowed Farrington to continue to shop as a customer. Pennington's, in turn, fired Farrington.

After his discharge from Pennington's, Farrington obtained employment with Mancini & Groesbeck, a food brokerage company. Farrington's job for Mancini & Groesbeck was to check retail stores

2

(including Buttrey) to ensure that food products supplied by Mancini & Groesbeck were properly stocked and displayed. His job required that he remain in the public area of the store and, although it involved handling of product it was different from his previous job in that it did not involve product stocking, removing stock, or crediting.

Approximately one year after Buttrey revoked Farrington's privilege of servicing its stores, Buttrey banned Farrington from entering Buttrey stores in any capacity -- even as a customer. As a result of this ban, Farrington could no longer perform the required tasks for Mancini & Groesbeck and he was terminated from that job.

On May 18, 1993, Farrington filed a complaint against Buttrey for tortious interference with his employment with Pennington's and Mancini & Groesbeck. Buttrey requested, and the District Court granted, summary judgment on Farrington's claim. Farrington appeals from this order.

The only issue on appeal is whether the District Court erred in granting Buttrey's motion for summary judgment.

We review summary judgment orders de novo. Spain-Morrow Ranch, Inc. v. West (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32.

> Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P. The initial burden is on the moving party to establish that there is no genuine issue of material fact; and once met, the burden shifts to the party opposing the motion to establish otherwise. [Citation omitted.1

Spain-Morrow Ranch, 872 P.2d at 331-32.

The District Court concluded there was no question of fact as to whether Buttrey acted without right or justifiable cause when it barred Farrington from servicing its stores. We disagree.

In support of its conclusion that Buttrey was justified to ban Farrington from its stores, the District Court considered that Farrington acknowledged that he improperly disposed of Buttrey's potato chips; that Farrington admitted that there was no justification for his throwing Buttrey's goods into the trash; that Farrington acknowledged that Buttrey was entitled to determine who may or may not deliver to its premises; and that Farrington made no showing that Buttrey's banning a person who acknowledged destroying its property is in any way without right or justifiable cause. Additionally, the District Court found that Pennington's fired Farrington because Farrington had a prior history of similar misconduct with other customers.

In Bolz v. Myers (1982), 200 Mont. 286, 651 P.2d 606, the seller of a business breached the sales contract in such a way as to interfere with the purchaser's business relationships with third parties. In *Bolz* we adopted the test from the Restatement (Second) of Torts § 767 (1977), to establish what factors are to be considered in determining whether interference with contractual rights is "improper." *Bolz*, 651 P.2d at 610. *Bolz* further considered the requirements to establish a prima facia case of interference with contractual or business relations, more recently set out in Richland National Bank & Trust v. Swenson (1991), 249

4

Mont. 410, 419, **816** P.2d 1045, 1051:

> In order to establish a prima facie case of tortious interference with business relations, the pleader **must** show that the acts (1) were intentional and willful; (2) were calculated to cause damage to the pleader in his or her business; (3) were done with the unlawful purpose of causing damage or loss, *without right or justifiable* cause on the part *of* the actor; and (4) that actual damages and loss resulted. [Citation omitted.] Thus, in order to establish a cause of action, it must be shown that the actor intentionally committed a wrongful act without justification or excuse. [Citation omitted. 1

The Restatement (Second) of Torts, § 767 (1977), provides

that:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

Comment b of the Restatement (Second) of Torts § 767, page 28,

advises that:

> [t]his Section is expressed in terms of whether the interference is improper or not, rather than in **terms of** whether there was a specific privilege to act in the manner specified. The issue in each case is whether the interference is improper or not under the circumstances; whether, upon consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors.

In Phillips v. Montana Education Association (1980), 187 Mont. 419, 423, 610 P.2d 154, 157, we recognized that the law, independently of a contract, imposes upon strangers to a contract a duty not to interfere with the contract's performance.

In State Medical Oxygen v. American Medical Oxygen (1994), 267 Mont. 340, 344, 883 P.2d 1241, 1243, we held that:

> If a defendant establishes the absence of a genuine issue of material fact as to one of the elements constituting the cause of action, and the plaintiff fails to come forward with proof showing the existence of a genuine issue as to that element, summary judgment in the defendant's favor is proper. [Citation omitted.] Disputed facts are material, therefore, if they involve elements of the cause of action or defense at issue to an extent that necessitates resolution of the issue by a trier of fact. [Citation omitted.] Any inferences to be drawn from the factual record must be resolved in favor of the party opposing summary judgment. [Citation omitted.]

In Phillip R. Morrow v. FBS Insurance (1989), 236 Mont. 394, 402, 770 P.2d 859, 864, we considered whether a directed verdict was appropriate where a jury could consider facts to be weak evidence supporting or opposing the existence of justification on the part of the parties. We held that "a showing that the defendant acted without right or justification is part of the plaintiff's prima facie case in an action for intentional interference with prospective business advantage." Phillip R. Morrow, 770 P.2d at 864 (citation omitted). We further held that "the jury could find from the evidence introduced at trial that FBS's alleged actions were motivated without right or justification." Phillip R. Morrow, 770 P.2d at 864. In the instant case, a jury could conclude that Buttrey was not justified in banning Farrington from its stores,

thus presenting an issue of material fact.

While the District Court focuses on the seriousness of Farrington's disposing of **Buttrey's** property, it ignores, among other facts which a jury may consider important, that the potato chip incident occurred over one year before Buttrey banned Farrington entirely from its stores. Additionally, while working for Mancini & Groesbeck, Farrington was merely to check the customer area of retail stores to ensure that food products supplied by Mancini & Groesbeck were properly stocked and displayed. Farrington's work for Mancini & Groesbeck did not involve removing products or crediting Buttrey for old or expired products. Whether, a year after the potato chip incident, Buttrey's banning of Farrington from even the customer area of its stores was "improper" is a question of fact which precludes summary judgment.

Applying the analysis from *Bolz*, the four-part test expressed in *Richland,* and the Restatement (Second) of Torts § 767 (1977) to the instant case, we hold that Buttrey did not meet its burden of proving that there are no genuine issues of material fact. See *Spain-Morrow Ranch,* 872 P.2d at 331-32. Reversed.

_W. William Leaphart_
                        Justice

We concur.

_____
            Chief Justice

_Terry Trieweiler_

_William E. Hunter_

_____

_____
Justices

8

Chief Justice J. A. Turnage respectfully dissents.

Buttrey undisputedly had the right to exclude Farrington, an admitted thief, from its stores. By its interpretation of one element of Farrington's cause of action, the majority has kept this action alive in spite of that clear fact.

The majority interprets the third element of a cause of action for tortious interference with business relations as requiring proof that the acts were done without _either_ right or justifiable cause on the part of the actor. I believe that element is correctly interpreted as requiring proof that the acts were done with _neither_ right nor justifiable cause; i.e., where the acts were done either by right or with justifiable cause, the tort does not lie.

I would rule that because Buttrey undisputedly had the right to exclude Farrington from its stores, there was a failure of proof by Farrington on that element. I would therefore rule that summmary judgment was proper.

_____
Chief Justice

Justice Fred J. Weber and Justice Karla M. Gray:

We join in the dissent of Chief Justice Turnage.

_____
Justice

_____
Justice