No. 00-707

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 286

GEORGE K. POSPISIL,

Plaintiff and Appellant,

v.

FIRST NATIONAL BANK OF LEWISTOWN,

a Banking corporation, and ALEX R. ZIER,

individually and in his capacity as an Agent

or Officer of First National Bank of Lewistown,

and JOYCE M. POSPISIL,

Defendants and Respondents.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

Honorable John R. Christensen, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Jack R. Stone, Attorney at Law, Lewistown, Montana

For Respondents:

Gerald B. Murphy and Nancy Bennett, Moulton, Bellingham,

Longo & Mather, P.C., Billings, Montana

Gary S. Deschenes, Deschenes Law Office, Great Falls, Montana

Submitted on Briefs: May 10, 2001
Decided: December 20, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 George K. Pospisil (George) appeals from a July 5, 2000, Order issued by the Tenth Judicial District Court, Fergus County, granting summary judgment to defendants. We affirm.

¶2 George raises the following issues on appeal:

¶3 1. Did the District Court err in granting summary judgment to defendants on George's claims of tortious interference with business relations, prima facie tort and intentional infliction of emotional distress?

¶4 2. Did the District Court abuse its discretion by awarding Rule 11 sanctions to First National Bank of Lewistown (the Bank) and Joyce Pospisil (Joyce)?

## FACTS AND PROCEDURAL BACKGROUND

¶5 George and Joyce were married in 1979 and separated in 1994. While they were married, Joyce and George operated, and for a while lived on, a ranch and farm located in Fergus County, Montana (the Ranch). George filed a petition for dissolution of marriage in 1994, and thus began the battle over the ranch property that is the subject of this appeal.

¶6 In June 1996, the District Court entered a final dissolution decree, awarding Joyce

$305,855 as her net share of the marital estate. George was awarded $340,443 as his share of the marital estate. The court granted the parties 90 days to implement a plan for distributing the assets, or "the Court shall appoint a referee/receiver to conduct a public sale of the ranch assets, and after payment of all debts and expenses of sale, distribute the net proceeds to the parties pursuant to the distribution as set forth herein." Additionally, George was granted "exclusive possession of the ranch properties, bank accounts and other assets necessary to keep the ranch a viable business entity."

¶7 As we noted in our decision in May 2000, regarding the parties' dissolution action, Joyce's days of wrangling with her former spouse were far from over. *In re Marriage of Pospisil*, 2000 MT 132, ¶ 5, 299 Mont. 527, ¶ 5, 1 P.3d 364, ¶ 5.

¶8 At issue in this appeal is $150,000 which the Bank loaned to Joyce in November 1997. The loan consolidated seven loans that Joyce took out from January 1996 through May 1997 for living expenses during the dissolution proceeding. The Bank executed a mortgage on all of Joyce's "right, title and interest in" the Ranch property. George learned that the Ranch was encumbered by this mortgage by accident when he was at the courthouse on other business. He alleges that he became very distraught upon learning of the mortgage and security interest because he believed he would not be able to obtain loans on the property to enable him to conduct ranch operations and meet his obligations.

¶9 George subsequently filed this action in December 1998 alleging Tortious Interference with Contract, Business Relationships and Prospective Business Advantage, Prima Facie Tort, and Intentional Infliction of Severe Emotional Distress against Joyce, the Bank and Alex Zier. Zier is president of the Bank and Joyce's son-in-law. After discovery, all defendants moved for summary judgment. The District Court granted defendants' motions and entered judgment on July 11, 2000. On July 21, 2000, Joyce filed a motion to amend the judgment to add sanctions pursuant to Rule 11, M.R.Civ.P. In September, the court granted Joyce's request for Rule 11 sanctions. On September 27, 2000, the Bank filed a motion seeking sanctions under Rule 11. In December, the District Court granted the Bank's motion for sanctions in the amount of $42,011.65. On the same day, the court entered a separate order setting the amount of sanctions awarded to Joyce at $9,686.80.

¶10 George appeals the District Court's order granting the defendants summary judgment, as well as the orders granting Joyce and the Bank Rule 11 sanctions.

## DISCUSSION

¶11 Did the District Court err in granting summary judgment to defendants on George's claims of tortious interference with business relations, prima facie tort and intentional infliction of emotional distress?

¶12 We review summary judgment orders de novo. *Farrington v. Buttrey Food and Drug Stores Co.* (1995), 272 Mont. 140, 142, 900 P.2d 277, 279. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The initial burden is on the moving party to establish that there is no genuine issue of material fact; once met, the burden shifts to the party opposing the motion to establish otherwise. *Farrington*, 272 Mont. at 142, 900 P.2d at 279. Disputed facts are material if they involve elements of the cause of action or defense at issue to an extent that necessitates resolution of the issue by a trier of fact. *Farrington,* 272 Mont. at 144, 900 P.2d at 280.

Intentional Interference with Prospective Economic Advantage

¶13 The tort of intentional interference with prospective economic advantage requires acts that are: (1) intentional and willful; (2) calculated to cause damage to the plaintiff's business; (3) done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages. *Farrington,* 272 Mont. at 143, 900 P.2d at 279. Thus, in order to establish a cause of action, it must be shown that the actor intentionally committed a wrongful act without justification or excuse. *Farrington,* 272 Mont. at 143, 900 P.2d at 279. We have previously outlined factors to be considered in determining whether an actor's conduct is improper, such as: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relation between the parties. *Farrington,* 272 Mont. at 143, 900 P.2d at 279.

¶14 The District Court held that there were no material facts evidencing malicious intent and that there were no material facts on the issue of damages.

¶15 George argues that there is ample evidence that defendants encumbered the Ranch deliberately, knowing that Joyce had no right to the property and knowing that harm to George would result, and that, therefore, a material fact exists on the issue of malicious

intent. George also claims that all the defendants knew "that an encumbrance on the property would impede if not totally obstruct George's ability to use the Ranch as collateral for financing its operations." George argues that all defendants knew of the dissolution findings granting him "exclusive right" to the Ranch, and, therefore, any mortgage filed by the bank against the Ranch was, per se, unlawful.

¶16 Several of the loan documents submitted as exhibits by George indicate the Bank's knowledge of the dissolution action. For instance, a Loan and Discount Committee Report dated October 10, 1996, stated in connection with a loan to Joyce that the "[p]rimary source of repayment is to come from sale of agricultural assets per divorce decree dated June 20, 1996. . . . Joyce is to receive estimated liquidated proceeds of $305,855."

¶17 In addition, a letter to Joyce from Michael S. Phillips, Vice President of the Bank, dated December 26, 1996, stated that, "We have elected to approve an additional $15,000 to cover the following: $1500 per month living expenses for the next ten months. . . . [W]e are unable to approve your request to cover the attorney fees and the ranch related costs. Due to the fact that the divorce case is on appeal and the results of the Supreme Court ruling is yet unknown, we feel that there may be a limited source of repayment for any additional credit."

¶18 Finally, the mortgage document itself, filed on November 28, 1997, states that "Grantor [Joyce] mortgages and conveys to Lender all of Grantor's right, title and interest in and to the following described real property [the Ranch]."

¶19 George's arguments on this issue are at the most disingenuous. The parties were, indeed, all aware of the dissolution findings, including George himself. He was aware that he owed Joyce over $300,000 for her interest in the ranch. The mortgage filed by the Bank encumbered only that part of the Ranch that Joyce had legal interest in and gave Joyce needed income to survive on until such time as she was paid her interest in the marital estate.

¶20 The acts of Joyce and the Bank were legal acts. Standing alone, they do not give rise to any presumption or inference that the acts were done to harm George. *Taylor v. Anaconda Federal Credit Union* (1976), 170 Mont. 51, 56, 550 P.2d 151, 154. George presents no other admissible evidence to indicate that the Bank or Joyce acted with an intent to harm his business.

¶21 Applying the factors from *Farrington* to the instant case, we conclude that the acts of Joyce and the Bank were proper, and the District Court did not err in granting summary judgment to defendants on the claim of tortious interference with business relations.

## Prima Facie Tort

¶22 George argues on appeal that several jurisdictions have adopted prima facie tort as a separate cause of action. Section 870 of the Restatement, Second, of Torts includes this theory under the title "Liability for Intended Consequences-General Principle" and states, "One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances."

¶23 Montana has not recognized a separate cause of action for prima facie tort. Under the facts of this case, we decline to address the issue now. Based on our conclusion that the defendants' actions were not improper, no claim for prima facie tort can arise from those actions. We hold that the District Court did not err in granting defendants summary judgment on this issue.

## Intentional Infliction of Emotional Distress

¶24 An independent cause of action for infliction of emotional distress arises under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission. *Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 238, 896 P.2d 411, 429. The difference between the negligent and intentional versions of the cause of action lies, not in the elements of the tort, but in the nature and culpability of the defendant's conduct. *Sacco*, 271 Mont. at 238-39, 896 P.2d at 429. It is for the court to determine whether on the evidence severe or serious emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed. *Sacco*, 271 Mont. at 239, 896 P.2d at 429.

¶25 George claims that the defendants' actions were intentional and "were taken outside of the bounds of the legal action pending between the parties. . . . [T]he evidence shows a deliberate, secretive attempt to circumvent the orders of this Court and the district court. . . . George's serious emotional distress was the inevitable result of defendants' outrageous actions." Once again, George does not cite to any facts in the record to support these broad allegations.

¶26 We concluded above that defendants' actions were not improper, and, therefore, no claim for emotional distress can arise from those actions. We hold that the District Court did not err in granting defendants summary judgment on the claim of intentional infliction of emotional distress.

¶27 Did the District Court abuse its discretion by awarding Rule 11 sanctions to Joyce and the Bank?

¶28 Rule 11, M.R.Civ.P., provides that all pleadings must be signed and that:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

¶29 This Court gives a district court broad discretion to determine whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics. Therefore, we apply the following standard of review: A district court's findings of fact will be overturned if clearly erroneous. The court's legal conclusion that the facts constitute a violation of Rule 11 will be reversed if the determination constitutes an abuse of discretion. We will review the case de novo only if the violation is based on the legal sufficiency of a plea or motion. *Friends of the Wild Swan v. Department of Natural Resources and Conservation*, 2000 MT 209, ¶ 58, 301 Mont. 1, ¶ 58, 6 P.3d 972, ¶ 58 (citing *D'Agostino v. Swanson* (1990), 240 Mont. 435, 446, 784 P.2d 919, 926).

¶30 The District Court concluded that George violated Rule 11 because his action was "not well grounded in fact," and was brought for an improper purpose. Specifically, the court found: that George did not make a legitimate attempt to borrow money from other lenders and that his loan requests were attempts to gather rejection letters in preparation

for this lawsuit; that George had not complied with court orders in the dissolution proceeding in that he had not paid Joyce for her interest in the Ranch or paid Joyce court ordered maintenance payments; and that he filed the lawsuit because he was angry about the dissolution proceeding and relied on Zier's relationship with Joyce to bring the Bank into the lawsuit. The court took judicial notice of a questionable declaratory judgment action filed by Ruby Pospisil (George's mother) for a debt on the Ranch of $600,000 that would have prevented Joyce from receiving any interest in the Ranch and noted that George had power of attorney for Ruby and that the attorney representing George in the present action had filed the declaratory action for Ruby. A previous quiet title action by Ruby against the Ranch had already been judicially determined to be a "conspiratorial sham between son (George) and Mother (Ruby) to deplete the marital estate to the wife's (Joyce) detriment after 17 years of marriage."

¶31 The District Court concluded that "the Complaint filed against Joyce was groundless and was not pursued in good faith. . . . George's conduct . . . was not reasonable under the circumstances."

¶32 We hold that these findings are not clearly erroneous and that the District Court's conclusion that these facts constitute a Rule 11 violation is not an abuse of discretion.

¶33 George argued at the District Court, and renews his argument on appeal, that the Bank is not entitled to sanctions because it filed its motion requesting sanctions after the deadline for amending the judgment under Rule 59(g), M.R.Civ.P., had passed. In contrast, Joyce's motion was filed within the rule's time limit.

¶34 The District Court, in its Order granting sanctions for the Bank, stated, "Nothing in Rule 11 limits the time in which a party can seek sanctions. In fact, Rule 11 grants the Court discretion to impose sanctions on its own initiative. . . . This Court has determined that George violated Rule 11 and, therefore, regardless of when, or even whether, First National filed its Motion, sanctions are appropriate."

¶35 The time when sanctions are to be imposed rests in the discretion of the trial judge, and a Rule 11 motion is not barred if filed after a dismissal order or after entry of judgment. Rule 11, F.R.Civ.P., advisory committee note. *See also Baker v. Alderman* (11th Cir. 1998), 158 F.3d 516, 523.

¶36 This Court has repeatedly held that the mandatory language of Rule 11 "requires the

court to impose sanctions on the offending party, his counsel or both. Failure to impose sanctions . . . will be deemed reversible error." *D'Agostino*, 240 Mont. at 446, 784 P.2d at 925. *See also Wise v. Sebena* (1991), 248 Mont. 32, 39, 808 P.2d 494, 498-99. Additionally, the type of sanction imposed for a Rule 11 violation is uniquely within the discretion of the district court. *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926.

¶37 In this case, the District Court's rationale for finding a Rule 11 violation applied equally to Joyce and the Bank. Once the court found the violation, imposition of sanctions became mandatory.

¶38 The District Court held a hearing on sanctions and heard evidence regarding costs and attorney fees. In its Order awarding sanctions, the court did a careful analysis of the factors set forth in *Walker v. Higgins* (1996), 277 Mont. 443, 450, 922 P.2d 1154, 1158, to determine the reasonableness of the fees. The court noted that "because of Joyce's limited assets, First National was required to take a lead role in this litigation."

¶39 We hold that the District Court did not abuse its discretion in awarding sanctions to the Bank.

¶39 Joyce also urges this Court to impose sanctions on appeal. Our authority to impose sanctions on appeal in a civil case stems from Rule 32, M.R.App.P., which provides:

> If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

¶40 We conclude that there were reasonable grounds for George to appeal the District Court's imposition of sanctions. Therefore, we cannot and will not impose sanctions on appeal in this case.

¶41 The District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ JIM RICE

Justice Patricia O. Cotter concurs and dissents.

¶43 I agree with the majority's disposition of Issue One. I also agree that Rule 11 sanctions were appropriately awarded to Joyce, as her motion to amend the judgment under Rule 59 (g), M.R.Civ.P., was timely filed. I dissent from the majority's conclusion that a Rule 11 motion is not barred even if filed after entry of judgment and the passage of time allowed under Rule 59 for amendment of the judgment, and would therefore reverse the award of sanctions entered in favor of the Bank.

¶44 While I agree that a district court has broad discretion when it comes to awarding sanctions under Rule 11, I think it is a mistake to hold, as we have here, that the District Court has unlimited discretion to do so, and may impose such sanctions at any time, even if it has otherwise lost jurisdiction of the matter. In *In re Custody of R.L.S. and T.L.S.* (1983), 207 Mont. 199, 674 P.2d 1082, we held that a district court was without jurisdiction to enter an award of attorney fees for the first of two trials and the subsequent appeal, upon motion made by the mother a year after the first judgment was entered, notwithstanding the fact that there was statutory authority for the award of fees. We held that, since the first judgment did not provide for fees, it would have had to be amended to include fees before the opposing party could be ordered to pay them. We concluded that, since a timely motion to amend the judgment had not been filed, the district court lacked jurisdiction to later grant fees for the first trial and appeal upon the mother's request. *R.L.S. and T.L.S.*, ¶¶ 13-15. I would apply the same rationale here, in the interests of finality. Since the Bank filed its request for sanctions after the deadline for amending the judgment had passed, I would deny it as untimely.

/S/ PATRICIA COTTER

Justice Terry N. Trieweiler joins in the foregoing special concurrence and dissent.

/S/ TERRY N. TRIEWEILER