FILED

November 1 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0240

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 270

LOREN and MARY HINEBAUCH, husband and wife,
and GOOD THINGS, LLC,

        Plaintiffs and Appellants,

   v.

DOUGLAS and KIM McRAE, husband and wife,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                 In and For the County of Custer, Cause No. DV 10-19
                 Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Eric Edward Nord, Tanis M. Holm, Crist, Krogh & Nord, LLC,
                Billings, Montana

                Paula Saye-Dooper, Saye Law, PLLC, Billings, Montana

        For Appellees:

                William J. Speare, Speare Law Firm, PLLC, Billings, Montana

                        Submitted on Briefs:  August 17, 2011

                                 Decided:  November 1, 2011

Filed:

            _____
                          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Loren and Mary Hinebauch and Good Things, LLC (Hinebauchs), appeal from the order of the Sixteenth Judicial District Court, Custer County, Montana, granting Douglas and Kim McRae's (McRaes) motion for summary judgment. The Hinebauchs allege the District Court erred in determining disputed issues of material fact regarding their breach of contract and unjust enrichment claims, and in determining that the Hinebauchs had unclean hands, thus barring their unjust enrichment claim.

¶2 We affirm the result on different grounds.

## ISSUES

¶3 The Hinebauchs raise three issues on appeal. A restatement of the issues is:

¶4 1. Did the District Court err in determining disputed issues of material fact and granting summary judgment to the McRaes for the breach of contract claim?

¶5 2. Did the District Court err in determining disputed issues of material fact and granting summary judgment to the McRaes on the unjust enrichment claim?

¶6 3. Did the District Court err in determining the Hinebauchs had unclean hands, thus barring their unjust enrichment claim?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 In November 2005, the Hinebauchs entered a buy-sell agreement to purchase the Shores commercial building at 707 Main Street, Miles City, Montana, for $85,000 from Mickey and Marcia McFarland. The Hinebauchs evidently paid a $500 earnest money deposit to secure the purchase, but they never closed or purchased the building from the McFarlands. The Hinebauchs then met with Douglas McRae on December 12, 2005, and

2

discussed the prospects of the McRaes purchasing the building. The McRaes then entered a buy-sell agreement with the McFarlands to purchase the building for $85,000, and the McRaes purchased the building for $85,000 plus closing costs on December 16, 2005. None of the $500 deposit originally made by the Hinebauchs was applied to the purchase.

¶8 The Hinebauchs, who operated a business in the building, began making "rent" payments to the McRaes in March 2006. Later that spring, the McRaes presented the Hinebauchs with a proposed lease agreement, which referred to the McRaes as the Lessors and the Hinebauchs as the Lessees. The McRaes proposed to lease the building to the Hinebauchs for five years, from January 1, 2006, through December 31, 2011, in exchange for monthly payments of $501.67, and the Hinebauchs would have the option to purchase the building at the end of the five years for $86,000. The McRaes were to obtain fire and casualty insurance on the building, while the Hinebauchs were responsible for the payments of taxes, utilities, maintenance, and premiums for the fire and casualty insurance, as well as for obtaining and paying for a commercial general liability insurance policy and tenant fire loss protection. The proposed lease agreement also included a remodeling costs provision that the "Lessees shall be solely responsible for all costs necessary to remodel the premises to suit Lessees' needs." The McRaes obtained fire and casualty insurance on the building for 80% of the replacement costs, and were named as the sole insured party on the policy.

¶9 The Hinebauchs received the proposed lease agreement from the McRaes, made comments and suggestions regarding it, and returned it to the McRaes without signing it.

3

They proposed multiple modifications to the proposed lease, some substantive, and some not. Notably, the Hinebauchs did not propose any changes to Article VII, Section 7.01 of the proposed lease agreement. This section, titled Casualty Insurance, states:

> Lessors shall obtain and maintain fire and other casualty insurance on the entire premises and Lessees shall pay fire or casualty insurance within fifteen (15) days of the posting of written notice to Lessees by Lessors. Lessees shall obtain and maintain at all times during the term hereof with a responsible insurer $1,000,000.00 combined single limit commercial general liability insurance and tenant fire of not less than $100,000.00. All insurance policies shall have affixed thereto a loss payable clause in favor of the Lessors. Lessees shall pay the entire cost of such insurance.

¶10 In any event, no lease was ever signed between the parties. Rather, the Hinebauchs contend that they "entered into an oral agreement with the McRaes" to purchase the building, and that the material terms of the agreement were a purchase price of $85,000; $1,000 in closing costs; payment of seven percent (7%) interest; payment of taxes, insurance, and maintenance/remodel costs for a period of five years; and a balloon payment of $86,000 on or before five years, at which time the building would be deeded to the Hinebauchs. The Hinebauchs also allege that the McRaes merely "loaned" them $86,000, and that they have already paid the McRaes $19,578 in "monthly interest payments," approximately $8,473 in property insurance, approximately $8,277 in property taxes, and approximately $5,000 in maintenance and repairs. In other words, they contend they were in the process of purchasing the building.

¶11 The Hinebauchs state that the reason the McRaes obtained the insurance was because the property was not to be transferred to the Hinebauchs until the final payment of $86,000 was made to the McRaes. The Hinebauchs also believe the McRaes should

4

have listed the Hinebauchs as loss payees on the policy in order to protect the Hinebauchs' interests in the property.

¶12 The Hinebauchs further allege that by April 2006 they spent over $70,000 on renovations of the building, moved Mary's inventory into the building, and that her store was in "full operation." Over two years later, on June 19, 2008, Mary formed Good Things, LLC in the state of Montana.

¶13 On March 23, 2009, at no fault of either party, a fire damaged the building, rendering it uninhabitable. The McRaes contend that as of the date of the fire, the Hinebauchs were behind on payments by $5,581.66, including the insurance premium for the policy in effect at the time of the fire, and the property taxes due the previous fall. The Hinebauchs allege they were behind by only $1,953.63 and that the McRaes had declined their offer of reimbursement for the missing insurance payments. After the fire the McRaes received the 80% insurance proceeds for the loss of the building, totaling approximately $335,000. The McRaes state they "incurred substantial expenses related to demolition and clean up" of the building, while the Hinebauchs argue the McRaes "did not expend any further resources beyond their initial purchase of the building." The Hinebauchs allege the fire destroyed over $381,250 worth of their inventory, antiques, and other personal property in the building. The McRaes later sold the lot.

¶14 After the fire, the Hinebauchs sought to enforce the alleged oral purchase agreement and collect a portion of the insurance money. In March 2010, the Hinebauchs and Good Things, LLC filed a complaint in the Sixteenth Judicial District Court in Custer County, Montana, alleging breach of contract, unjust enrichment, and fraud against the

5

McRaes. The District Court subsequently dismissed Good Things, LLC as a party and dismissed the fraud claim, neither of which is at issue in this appeal.

¶15 On March 28, 2011, the District Court granted the McRaes' motion for summary judgment against the Hinebauchs on the breach of contract and unjust enrichment claims. The court determined that because no evidence was presented showing that the McRaes agreed to obtain insurance for the building naming the Hinebauchs as an insured party, there was a lack of mutual consent and the agreement was unenforceable. Even if there had been mutual consent, the Hinebauchs would have materially breached the agreement by failing to pay the insurance policy premiums required to keep the policy in effect prior to the fire. Regarding the unjust enrichment claim, the court determined that the Hinebauchs did not establish any requisite misconduct or fault on the part of the McRaes, and that the Hinebauchs had unclean hands in seeking equitable relief on the claim for unjust enrichment.

¶16 The Hinebauchs appeal.

**STANDARD OF REVIEW**

¶17 We review a district court's grant of summary judgment de novo, applying the standards of M. R. Civ. P. 56. *Smith v. Burlington N. & Santa Fe Ry.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639 [hereinafter *Burlington*] (citation omitted). "The moving party has the burden of establishing the absence of a genuine issue of material fact, and entitlement to judgment as a matter of law." *Burlington*, ¶ 10 (citation omitted). To fulfill this burden, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" must not demonstrate a genuine issue of

6

material fact. *Hinderman v. Krivor*, 2010 MT 230, ¶ 13, 358 Mont. 111, 244 P.3d 306 (citation omitted). Whether the moving party is "entitled to judgment as a matter of law is a legal conclusion . . . ." *Ternes v. State Farm Fire & Cas. Co.*, 2011 MT 156, ¶ 18, 361 Mont. 129, 257 P.3d 352 (citation omitted). We review a district court's conclusions of law for correctness. *Burlington*, ¶ 11 (citation omitted).

¶18 "Once the moving party has met this burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact." *Burlington*, ¶ 10 (citation omitted). Disagreement about fact interpretation does not make the fact or facts material, and disputed facts are only material if they "involve elements of the cause of action or defense at issue to an extent that necessitates resolution of the issue by a trier of fact." *Sprunk v. First Bank Systems*, 252 Mont. 463, 466, 830 P.2d 103, 105; *Farrington v. Buttrey Food & Drug Stores Co.*, 272 Mont. 140, 144, 900 P.2d 277, 280 (1995) (citation omitted). Additionally, "[a]ll reasonable inferences that may be drawn from the evidence should be drawn in favor of the party opposing summary judgment." *Smith v. Farmers Union Mut. Ins. Co.*, 2011 MT 216, ¶ 14, 361 Mont. 516, 260 P.3d 163 (citation omitted).

**DISCUSSION**

¶19 *Issue One: Did the District Court err in determining disputed issues of material fact and granting summary judgment to the McRaes for the breach of contract claim?*

¶20 On appeal, the Hinebauchs argue that the District Court inappropriately based its entire decision regarding the breach of contract claim on the issue of insurance for the building, did not correctly apply the elements of a contract to the facts of the case,

7

erroneously resolved genuine issues of material fact, and determined facts and terms of the contract clearly in dispute. The Hinebauchs argue the McRaes had a duty to perform under the contract and a duty to list the Hinebauchs on the insurance policy in order to protect the Hinebauchs' real and personal property interests. However, all of these arguments are immaterial if an enforceable contract never existed. We conclude that no enforceable contract or long-term lease existed in this case.

¶21 Contracts involving the sale of real property, the sale of an interest in real property, or a lease of real property for a period longer than one year must be in writing to satisfy the statute of frauds. Sections 28-2-903(1)(d), 30-11-111, MCA. Under Montana law,

> (1) The following agreements are invalid unless the agreement or some note or memorandum of the agreement is in writing and subscribed by the party to be charged or the party's agent:
>     (a) an agreement that by its terms is not to be performed within a year from the making of the agreement;
>
>                   .   .   .
>
>     (d) an agreement for the leasing for a longer period than 1 year or for the sale of real property or of an interest in real property. The agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing and subscribed by the party sought to be charged.
>
>                   .   .   .
>
> (2) Evidence of an agreement described in subsections (1)(a) through (1)(d) is not admissible without the writing or secondary evidence of the writing's contents.

Section 28-2-903(1) and (2), MCA. Likewise, an interest in real property "may not be created, granted, assigned, surrendered, or declared otherwise than by operation of law or a conveyance or other instrument in writing . . . ." Section 70-20-101, MCA.

8

¶22 The Hinebauchs argue that the District Court erroneously resolved issues of material fact. However, the determinative material facts are not in dispute. As the statute clearly states, an agreement for the lease for more than one year or the sale of real property or an interest therein is "invalid unless the agreement . . . is in writing and subscribed by the party to be charged." Section 28-2-903(1), MCA. It is undisputed that there was no signed written contract between the parties for the extended lease or the sale of the real property or an interest therein. Therefore, the alleged promises or agreements between the parties attendant to the lease and purchase of the real property—including the alleged oral agreement to include the Hinebauchs as an insured party on the insurance policy—are unenforceable by the Hinebauchs.

¶23 The policy behind the statute of frauds is to avoid precisely the type of litigation presented here. In general, the statute of frauds is designed to decrease uncertainties, litigation, and opportunities for fraud and perjury, and to discourage false claims based upon oral promises by requiring written evidence that the contract exists. *In re Estate of Braaten*, 2004 MT 213, ¶ 12, 322 Mont. 364, 96 P.3d 1125; *Orlando v. Prewett*, 218 Mont. 5, 12-13, 705 P.2d 593, 598-99 (1985). The statute of frauds also "gives security and certainty to titles," preserving them "against defects and qualifications not founded upon solemn instruments." *Great Falls Waterworks Co. v. Great N. Ry.*, 21 Mont. 487, 500, 54 P. 963, 967 (1898). Here, the parties dispute whether oral promises with respect to title, insurance, and other particulars were made. These problems would not have arisen had the parties entered into a written agreement as required by law. Because they

9

did not reduce their agreements to writing, the statute of frauds precludes the Hinebauchs from enforcing any of the promises ostensibly made to them by the McRaes.

¶24 We acknowledge that the parties did operate under an unwritten rental arrangement for over three years. Absent an enforceable writing, the rebuttable presumption is that such commercial arrangement would have a term of lease for one year, after which it would be considered a tenancy at will and presumed to be a month-to-month lease, according to the facts. Sections 70-26-201, -204, MCA; *Roseneau Foods v. Coleman*, 140 Mont. 572, 576-79, 374 P.2d 87, 89-90 (1962) (citations omitted); *Eagle Watch Invs. v. Smith*, 278 Mont. 187, 198-99, 924 P.2d 257, 263-64 (1996) (citations omitted).

¶25 Based on the foregoing, we conclude the District Court did not err in entering summary judgment in favor of the McRaes, though we reach this conclusion on a different basis than that cited by the court. We will not ignore a clearly applicable and determinative statute, and there is simply no question that the statute of frauds bars any attempt by the Hinebauchs to enforce an alleged oral promise made in connection with an unwritten agreement to lease and purchase real property. We will affirm a district court decision if the right result was reached, though for the wrong reason, and we do so here. *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275 (citation omitted).

¶26 We affirm the District Court's grant of summary judgment on the breach of contract claim.

¶27    *Issue Two: Did the District Court err in determining disputed issues of material fact and granting summary judgment to the McRaes on the unjust enrichment claim?*

¶28    The Hinebauchs argue that the McRaes were unjustly enriched in the amount of at least $299,000 by accepting the insurance proceeds and the proceeds from the sale of the lot after the fire, and by refusing to share the proceeds with the Hinebauchs according to their interests. They also argue they were justified in relying upon the McRaes to list them as loss payees on the insurance policy, that the McRaes wrongfully did not list them, and that the McRaes wrongfully misrepresented this fact to the Hinebauchs. The Hinebauchs also allege that the McRaes took advantage of them by receiving a reduced purchase price when the McRaes bought the building and by converting the purchase agreement into a lease agreement. However, these allegations are unsupported by the evidentiary record and insufficient to support a claim for unjust enrichment.

¶29    "The doctrine of unjust enrichment is an equitable means of preventing one party from benefiting from his or her wrongful acts," and in the absence of a contract between parties, it may create an implied contract in law. *Estate of Pruyn v. Axmen Propane, Inc.*, 2009 MT 448, ¶¶ 63-64, 354 Mont. 208, 223 P.3d 845 (citations omitted). To recover, a plaintiff must "show the element of misconduct or fault on the part of the defendant or that the defendant somehow took advantage of the plaintiff." *Estate of Pruyn*, ¶ 64 (citation omitted). If a plaintiff has suffered actual damage, the plaintiff may maintain an action for unjust enrichment and recover the actual damage proved, for the benefit wrongfully obtained, or restitution of property wrongfully withheld, if the action is maintainable under existing law. Section 27-1-602, MCA.

11

¶30    In addition to the undisputed facts previously noted, it is also undisputed that by virtue of the buy-sell agreement between the McFarlands and the McRaes, the McRaes became the owners of the building.  Because we have determined that the oral agreement between the Hinebauchs and the McRaes is unenforceable, it is undisputed that the McRaes were at all times throughout this dispute the owners of the building.  It is also undisputed that the Hinebauchs, as lessees, were not named as an insured party on the policy, and were in arrears with the insurance payments to the McRaes at the time the fire destroyed the building.

¶31    Further, it is undisputed that the McRaes' proposed lease agreement specifically provided that the "Lessors shall obtain and maintain fire and other casualty insurance on the entire premises and Lessees shall pay fire or casualty insurance . . . ."  It also stated that the "Lessees shall obtain and maintain at all times during the term . . . commercial general liability insurance and tenant fire of not less than $100,000.00," and "[a]ll insurance policies shall have affixed thereto a loss payable clause in favor of the Lessors.  Lessees shall pay the entire cost of such insurance."  Rather than making any proposed changes to these parts of the proposed lease agreement, the Hinebauchs noted they were "OK."

¶32    Given these circumstances, the Hinebauchs have wholly failed to show any misconduct or fault on the part of the McRaes, as required for a claim of unjust enrichment.  The Hinebauchs' own affidavits provide the only supporting evidence for such assertions, and they are contrary to the other evidence before us.  The evidence establishes that the McRaes were at all times the legal and rightful owners of the

12

building, that they duly obtained insurance on the building in their sole names, and that the Hinebauchs were on notice of the manner in which the insurance would be paid in the event of a fire or other casualty. In sum, the McRaes engaged in no misconduct and did nothing to take advantage of the Hinebauchs. This being so, the Hinebauchs' claim for unjust enrichment is without merit. There being no material facts in dispute, the District Court did not err in granting summary judgment.

¶33 *Issue Three: Did the District Court err in determining the Hinebauchs had unclean hands, thus barring their unjust enrichment claim?*

¶34 Because we conclude there was no factual or legal basis for the Hinebauchs' unjust enrichment claim, we need not reach this question.

## CONCLUSION

¶35 For the foregoing reasons, the District Court's grant of summary judgment is affirmed.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS