No. 02-686

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 305

EUGENE F. HUGHES, JR. M.D.,

       Petitioner and Appellant,

   v.

MONTANA BOARD OF MEDICAL EXAMINERS,
an agency of the State of Montana,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Second Judicial District,
                     In and for the County of Silver Bow, Cause No. DV-00-295
                     The Honorable Thomas C. Honzel,  Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Bill Hansen, Attorney at Law, Bozeman, Montana

       For Respondent:

       Anne O'Leary, Department of Labor & Industry, Helena, Montana,
       Julia W. Swingley, Department of Labor & Industry, Helena, Montana.

                  Submitted on Briefs:  January 30, 2003

                       Decided:  November 6, 2003

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Dr. Eugene F. Hughes, Jr., M.D., appeals the District Court's Order affirming the denial of his Petition for Reconsideration by the Montana Board of Medical Examiners. We affirm.

## ISSUES

¶2     Hughes presents several issues on appeal which attempt to address the actions of the Montana Board of Medical Examiners, rather than the District Court's ruling. We restate the issue as follows:

¶3     Did the District Court err when it affirmed the Montana Board of Medical Examiners' decision to deny Hughes a hearing on his petition for reconsideration?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Hughes was a radiation oncologist in Butte, Montana. In October 1997, a patient undergoing treatment for breast cancer under his care filed a complaint against him with the Montana Board of Medical Examiners (Board). She alleged that Hughes drew a "smiley face" on her breast while marking it with a magic marker in preparation for radiation treatment. Hughes admitted the drawing, and explained that he occasionally drew smiley faces on particularly apprehensive patients to improve their morale.

¶5     As part of the Board's processing of the complaint, Hughes and the patient met with a Screening Panel (Panel). The Panel arranged for Hughes to enter into an agreement with the Montana Professional Assistance Program (MPAP) for a "complete Medical, Psychiatric,

2

and/or Chemical Dependency Evaluation." Hughes went to two out-of-state facilities for evaluation and treatment at the request of MPAP. Hughes subsequently sued MPAP and several physicians involved with MPAP for False Imprisonment, Conspiracy, and other claims arising out of the evaluation and treatment. That suit was dismissed on Summary Judgment. This Court affirmed the District Court's dismissal in *Hughes v. Pullman*, 2001 MT 216, 306 Mont. 420, 36 P.3d 339.

¶6    As a result of Hughes' lawsuit, MPAP withdrew from the arrangement with the Panel. The Panel then decided that Hughes should continue with some of the recommendations set out in the MPAP agreement, and that Hughes and the complaining patient should submit proposals for conditions to be included in a Stipulation between Hughes and the Board (Stipulation).

¶7    Hughes signed the Stipulation on June 11, 1999. Among other things, the Stipulation provided that Hughes admitted his actions toward the complaining patient were unprofessional; that his conduct would be reported to the National Practitioner Data Bank (NPDB); and that he would be on probation for one year.

¶8    In September 2000, the Board determined Hughes had successfully completed probation and entered an Order Terminating Probation. In October 2000, Hughes petitioned the Board to reconsider the Stipulation, pursuant to § 37-3-324, MCA. Hughes claimed that he had signed the Stipulation under duress, and that the conduct about which his patient had complained was not unprofessional. He further claimed that the fundamental fairness of the

3

Stipulation was at issue, as the record of "unprofessional conduct" in the NPDB had made it difficult for him to obtain employment as a radiation oncologist.

¶9 Hughes' Petition was discussed at a regularly scheduled Board meeting in November 2000. The Board denied the Petition.

¶10 Hughes then filed a Petition for Judicial Review of a Contested Case in the district court. After both judges in the Second Judicial District recused themselves, a hearing was granted in the First Judicial District on July 17, 2002. On August 21, 2002, the District Court filed a Memorandum and Order affirming the Board's denial of Hughes' Petition for Judicial Review. This appeal timely followed.

## STANDARD OF REVIEW

¶11 In reviewing the findings of a trial court sitting without a jury, this Court applies the following three-part test to determine if the trial court's findings on an agency decision are clearly erroneous: (1) the record will be reviewed to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, it will be determined whether the trial court misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of the evidence has not been misapprehended, this Court may still decide that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. *Weitz v. Mont. Dep't of Natural Resources and Conservation* (1997), 284 Mont.130, 133-134, 943 P.2d 990, 992 (citations omitted). Conclusions of law, whether they are made by a trial court or an agency, are reviewed by this Court to determine

4

if the tribunal's interpretation of the law is correct. *Steer, Inc. v. Dep't of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

## DISCUSSION

¶12 Did the District Court err when it affirmed the Montana Board of Medical Examiners' decision to deny Hughes a hearing on his petition for reconsideration?

¶13 We begin our review of a district court's findings on an agency decision by examining the record to determine if the findings are supported by substantial evidence. Hughes made two claims to the District Court: (1) that he signed the Stipulation under duress; and (2) that the drawing of the smiley face on the patient's breast was not unprofessional conduct. The District Court noted that Hughes admitted in the Stipulation that the behavior was unprofessional, and so the question of whether or not his conduct was unprofessional could only arise if the District Court first found that Hughes did indeed sign the Stipulation under duress.

¶14 The District Court reasoned that the record did not support Hughes' contention that he was misled or coerced into signing the Stipulation, stating, "While it is certainly understandable that Dr. Hughes experienced mental distress concerning his license, such distress does not amount to duress sufficient to negate this stipulation." In considering whether or not Hughes signed the Stipulation under duress, the District Court found that Hughes was represented by counsel during the negotiations and execution of the Stipulation; that the Stipulation stated that Hughes waived his right to appeal; and that the Stipulation clearly stated that it would be sent to the NPDB.

5

¶15    Having examined the record, we conclude that the following language found within the Stipulation clearly supports the District Court's findings:

4. Licensee desires to avoid the unnecessary expenditure of time and other valuable resources in resolving the issues raised in the investigation; therefore, Licensee hereby waives all rights to further notice, to contested case proceedings, to a hearing, and to appeal. . . .

5.A. [Licensee admits] that Licensee committed unprofessional conduct in his care of patient . . . and that such conduct constitutes grounds for . . . discipline. . . .

J. This Stipulation . . . shall be immediately forwarded to the [NPDB], the Federation of State Medical Boards, and any other inquiring person.
. . . .

8. Licensee has consulted legal counsel in connection with the instant investigation, and particularly with respect to this Stipulation . . . and enters into [it] with the advice of counsel.

¶16    Aside from a review of the Stipulation, the District Court also examined the record of Board proceedings. It found nothing to indicate that Hughes signed the Stipulation under duress. Our examination of the record leads us to the same conclusion. We therefore conclude that substantial evidence exists to support the District Court's finding that Hughes was not under duress when he signed the Stipulation.

¶17    We next consider whether or not the District Court misapprehended the effect of the evidence. The District Court reviewed Hughes' case pursuant to § 2-4-704(2), MCA, which states:

(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency

6

or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

    (a) the administrative findings, inferences, conclusions, or decisions are:

        (i) in violation of constitutional or statutory provisions;

        (ii) in excess of the statutory authority of the agency;

        (iii) made upon unlawful procedure;

        (iv) affected by other error of law;

        (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

        (vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

    (b) findings of fact, upon issues essential to the decision, were not made although requested.

¶18 We look to § 2-4-704(2), MCA, for guidance to determine whether the effect of the evidence was misapprehended by the District Court. Pursuant to § 2-4-704(2)(b), MCA, a court may reverse or modify a board's decision if the substantial rights of an appellant have been prejudiced because findings of fact, while requested, were not made.

¶19 In his Petition for Reconsideration to the Board, Hughes asked that the Board make a finding of fact that he signed the Stipulation under duress, and a finding of fact that the actions the patient complained of were not unprofessional. In its Order Denying Petition for Reconsideration, the Board merely stated that the denial of Hughes' Petition was "consistent with the Board's responsibility to protect the Montana public[.]" Thus, he argues, his requested findings were not made by the Board, resulting in prejudice.

¶20 The District Court, in its Memorandum and Order, did not specifically address the Board's non-issuance of the two findings of fact requested by Hughes. While it would have been preferable had the District Court specifically concluded that Hughes' substantial rights were not prejudiced by the absence of these two findings of fact, we conclude that this

7

omission did not prejudice Hughes. The District Court itself made findings of fact on the two very issues of which Hughes complains, and its findings were well-supported by the record. The District Court was not obligated to make its decision any clearer.

¶21 We conclude that the District Court has not misapprehended the effect of the evidence. Further, our review of the record does not leave us with the belief a mistake has been committed. Thus, we conclude that the District Court's findings of fact are not clearly erroneous, and that the District Court's failure to address the Board's omission of Hughes' requested findings of fact was not error.

¶22 Finally, we review the District Court's conclusions of law. Hughes had requested the Board to reconsider his case pursuant to § 37-3-324, MCA, which states:

> The board may, on its own motion or upon application at any time after . . . probation or of other action . . . reconsider its prior action and . . . terminate probation or reduce the severity of its prior disciplinary action, provided that the taking of any such further action or the holding of a hearing with respect thereto shall rest in the sole discretion of the board.

¶23 Based on its findings, the District Court concluded that the Board did not abuse its discretion when it denied Hughes' Petition for Reconsideration. We agree with the District Court that the language of § 37-3-324, MCA, grants the Board wide latitude in deciding whether to reconsider a prior action. Thus, we conclude that the District Court's conclusions of law were correct.

## CONCLUSION

¶24 For the foregoing reasons, we affirm the District Court.

8

                                        /S/ PATRICIA COTTER

We Concur:


/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE