05-535

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 177

EUGENE F. HUGHES, JR., M.D.,

        Plaintiff and Appellant,

   v.

LAURA LYNCH and the STATE
OF MONTANA,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DV 2001-120
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James M. Kommers; Kommers Law Firm, Bozeman, Montana

      For Respondents:

      Timothy Willis McKeon; Attorney at Law, Anaconda, Montana

Submitted on Briefs: June 7, 2006

Decided: July 25, 2007

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     This is an appeal by Eugene F. Hughes, Jr., M.D. ("Hughes") from the order and judgment of the District Court for the Second Judicial District, Silver Bow County, granting summary judgment in favor of Laura Lynch ("Lynch"). We affirm. The dispositive issue on appeal is whether the District Court erred in determining that there were no genuine issues of material fact with respect to Hughes's malicious prosecution, abuse of process, and tortious interference claims.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     On February 2, 1998, Lynch filed a complaint with the Montana Human Rights Commission ("HRC") alleging unlawful gender discrimination by St. James Community Hospital ("St. James") and Hughes. Lynch subsequently amended her complaint to add an allegation that Hughes's actions had created an extremely hostile workplace. The HRC investigated the complaint. The final report issued by the HRC investigator stated that "the evidence supports that Hughes is an employer within the meaning of the Human Rights Act." The investigator recommended a finding of cause to believe that unlawful sexual harassment and retaliation had occurred.

¶3     Based on the investigative report, the case proceeded to a contested case hearing in May 2000. In his final agency decision, the Hearing Examiner stated that Hughes was neither an "employer" nor an "agent" of an employer under the Montana Human Rights Act, and, therefore, that Hughes did not bear an employer's liability for sexual harassment. However, according to the examiner, Hughes's behavior after Lynch filed her complaint constituted illegal retaliation.

2

¶4     Hughes appealed the Hearing Examiner's decision. On June 1, 2001, the Chairman of the HRC issued his order sustaining Hughes's appeal and reversing in part the Hearing Examiner's decision. Although the Chairman agreed that Hughes was not an employer, he determined that Lynch had not properly alleged retaliation in her complaint to the HRC. Lynch did not appeal from the order of the Chairman of the HRC.

¶5     On September 26, 2001, Hughes filed a complaint in the District Court against Lynch. He alleged as follows: first, that Lynch did not have probable cause for commencing and/or continuing the prosecution of her case before the HRC and that she was actuated by malice (the malicious prosecution claim); second, that in filing her complaint with the HRC and obtaining an initial finding of cause, Lynch used the administrative process to accomplish a purpose for which that process was not designed (the abuse of process claim); and third, that Lynch improperly interfered in the contractual and business relationships between Hughes and St. James, the medical staff of St. James, and Hughes's current and prospective patients (the tortious interference claim).[1]

---

[1] Hughes also named the State of Montana ("State") as a defendant. He alleged that the HRC had breached a duty of care owed to Hughes through its investigation of Lynch's complaint. On June 30, 2003, the District Court granted the State's motion for summary judgment on the ground that the State was entitled to absolute quasi-judicial immunity for its investigation of the complaint against Hughes and the compilation of its report. Hughes does not appeal this ruling. Lynch, however, argues that this case should be dismissed because the State is a necessary and indispensable party under M. R. Civ. P. 19. Yet, Lynch did not file a cross-appeal and, thus, this issue is not properly before this Court. *See Joseph Eve & Co. v. Allen*, 284 Mont. 511, 514, 945 P.2d 897, 899 (1997) (stating that a cross-appeal is necessary where the respondent seeks review of matters separate and distinct from those sought to be reviewed by the appellant (citing *Johnson v. Tindall*, 195 Mont. 165, 170, 635 P.2d 266, 268 (1981))); *see also Motta v. Philipsburg*

¶6 On July 15, 2004, Lynch filed a motion to dismiss or, in the alternative, for summary judgment. The District Court granted Lynch's motion and dismissed the case with prejudice on July 21, 2005. On July 28, the court entered judgment, stating that Hughes shall recover nothing from Lynch and, further, that Lynch shall recover costs from Hughes. Hughes appeals from the District Court's order and final judgment.

## STANDARD OF REVIEW

¶7 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. *Redies v. Attorneys Liability Protect. Soc.*, 2007 MT 9, ¶ 26, 335 Mont. 233, ¶ 26, 150 P.3d 930, ¶ 26; *Montana-Dak. Util. Co. v. City of Billings*, 2003 MT 332, ¶ 6, 318 Mont. 407, ¶ 6, 80 P.3d 1247, ¶ 6. Rule 56(c) provides that a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment. *Redies*, ¶ 26. Summary judgment is an extreme remedy that should never be a substitute for a trial on the merits if a controversy exists over a material fact.

---

*School Bd. Trustees*, 2004 MT 256, ¶ 15, 323 Mont. 72, ¶ 15, 98 P.3d 673, ¶ 15. Moreover, because we are affirming the District Court's grant of summary judgment in favor of Lynch, we would not need to reach the Rule 19 issue had Lynch properly appealed it.

*Montana Metal Buildings, Inc. v. Shapiro*, 283 Mont. 471, 474, 942 P.2d 694, 696 (1997).

¶8      The party moving for summary judgment has the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Hi-Tech Motors v. Bombardier Motor Corp.*, 2005 MT 187, ¶ 32, 328 Mont. 66, ¶ 32, 117 P.3d 159, ¶ 32 (citing *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 14, 323 Mont. 453, ¶ 14, 100 P.3d 987, ¶ 14).  If this burden is met, then the burden shifts to the nonmoving party to establish that a genuine issue of material fact does exist.  *Hi-Tech Motors*, ¶ 32.  If the district court determines that no genuine issue of material fact exists, the court then determines whether the moving party is entitled to judgment as a matter of law.  *Hi-Tech Motors*, ¶ 32.  This determination is a conclusion of law which we review for correctness. *Hi-Tech Motors*, ¶ 32.

## DISCUSSION

¶9      *Did the District Court err in determining that there were no genuine issues of material fact with respect to Hughes's malicious prosecution, abuse of process, and tortious interference claims?*

¶10      In opposition to Lynch's motion to dismiss or, in the alternative, for summary judgment (hereinafter, "summary judgment motion"), Hughes submitted the affidavit of Faye Ronco ("Ronco"), Lynch's co-worker, in which Ronco states that Lynch approached Ronco and said that "a lot of money could be made from this"—an apparent reference to Lynch's complaint filed with the HRC.  Hughes asserted that this statement in the Ronco affidavit demonstrated that a genuine issue of material fact existed with regards to each of Hughes's three claims against Lynch.  Thus, he maintained that he had

"clearly met his burden of coming forward with evidence of a material issue of fact as to whether Laura Lynch was motivated to proceed in response to sexual harassment or in recognition that 'a lot of money could be made from this.' " Accordingly, Hughes argued that Lynch's motion should be denied.

¶11 On appeal, Hughes sets forth essentially the same arguments that he advanced in the District Court. He argues that he met his burden as the nonmoving party to establish that a genuine issue of material fact exists because the Ronco affidavit demonstrates a factual dispute with respect to each of Hughes's three claims against Lynch, and therefore, that the District Court erred in granting summary judgment in favor of Lynch. We will evaluate each claim in turn.

## The Malicious Prosecution Claim

¶12 Malicious prosecution of a civil suit begins in malice, without probable cause to believe that the action can succeed, and finally ends in failure. *See McGuire v. Armitage*, 184 Mont. 407, 410, 603 P.2d 253, 255 (1979). In a civil action for malicious prosecution, the plaintiff's burden at trial is to introduce proof sufficient to allow reasonable jurors to find each of the six following elements: (1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage. *Plouffe v. DPHHS*, 2002 MT 64, ¶ 16, 309 Mont. 184, ¶ 16, 45 P.3d 10, ¶ 16 (citing *Vehrs v. Piquette*, 210 Mont. 386, 390, 684 P.2d 476, 478 (1984)). "If one of

6

these elements is not proven by *prima facie* evidence, judgment as a matter of law may be entered for the defendant." *Plouffe*, ¶ 16.

¶13 In her summary judgment motion, Lynch maintained that there was no genuine issue of material fact with respect to element (3). In this regard, she argued that she had probable cause to believe that Hughes was her employer because she perceived, based on past events in her workplace, that he had the ability and power to supervise and control employees. She also pointed out that the HRC's investigator had determined that Hughes was, in fact, her employer, given his ability to control employee's schedules and influence St. James's management policies. Although the HRC ultimately determined that Hughes did not have such authority, Lynch contended that her genuine belief to the contrary provided sufficient probable cause for her to file her complaint. Further, Lynch noted that the first investigative report filed by the HRC stated that there was probable cause to believe that Hughes had committed sexual harassment and retaliated against her. Finally, Lynch contended that, contrary to Hughes's assertion in his complaint that she continued to prosecute her case after she had reason to believe Hughes was not her employer, her actions before the HRC cannot constitute malicious prosecution because she had probable cause to institute the original proceeding. Therefore, according to Lynch, Hughes could not satisfy element (3), "a lack of probable cause for the defendant's acts."

¶14 Lynch also maintained that there was no factual dispute with respect to element (5)—whether the judicial proceeding terminated in Hughes's favor. According to Lynch, the HRC merely determined that Hughes was not an employer and that she had not

7

properly alleged retaliation in her complaint. Lynch contended that both of these determinations were technical in nature and did not address the underlying merits of the case—"i.e., whether Hughes harassed and retaliated against [Lynch]." Therefore, Lynch argued that Hughes could not prove all of the requisite elements of a malicious prosecution claim and that she was entitled to judgment as a matter of law.

¶15 In its order granting summary judgment in favor of Lynch, the District Court stated that it had determined "that there <u>was</u> probable cause for Lynch to believe Hughes was her employer and to pursue the HRC action against him." Therefore, according to the court, Hughes could not prove that there was a lack of probable cause for Lynch's acts (element (3)). Further, the court stated that Hughes "cannot prove that the judicial proceeding terminated favorably for the plaintiff. This element requires a determination on the merits of the case, and an HRC hearing cannot do that" (element (5)).

¶16 We agree with the District Court that Lynch demonstrated that she had probable cause to file and pursue her complaint against Hughes with the HRC. Probable cause, in the context of the tort of malicious prosecution of a civil suit, has been defined as follows:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either
> (a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or
> (b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information.

8

*Restatement (Second) of Torts* § 675 (1977). We have not yet articulated the probable cause standard for the tort of malicious prosecution of a civil suit; however, we are persuaded that the standard articulated in § 675 of the Restatement (Second) of Torts is the correct standard for ascertaining whether there was a lack of probable cause for the defendant's acts (element (3)). We therefore adopt this standard.

¶17 In the case at hand, Lynch demonstrated that she reasonably believed, under the facts upon which her claim was based, that her claim was valid under Title 49, Chapter 2, MCA. In this regard, Lynch relied on the fact that the HRC's initial investigator had recommended a finding of cause to believe that Hughes was Lynch's employer and that unlawful sexual harassment and retaliation had occurred. Although the HRC ultimately determined that Hughes was not Lynch's employer and that Lynch had not properly pleaded a claim of retaliation, we observe that this determination does not mean that Lynch did not have probable cause for filing her complaint in the first place. "It is generally agreed that the termination of the proceeding in favor of the person against whom it is brought is no evidence that probable cause was lacking, since in a civil action there is no preliminary determination of the sufficiency of the evidence to justify the suit." Prosser, *The Law of Torts* § 120, at 855 (4th ed., West 1971). Additionally, Lynch pointed out that Hughes had not yet come forward with any evidence to suggest that she lacked probable cause in filing and pursuing the HRC complaint.

¶18 Because Lynch established the absence of a genuine issue of material fact with respect to element (3) and her entitlement to judgment as a matter of law on this claim, the burden shifted to Hughes to establish the contrary. In this regard, Hughes directs our

9

attention to Lynch's alleged statement set forth in the Ronco affidavit that "a lot of money could be made from this"; however, this statement has no bearing on whether Lynch acted without probable cause throughout the course of the HRC proceedings. Hughes also claims that there was a lack of probable cause for Lynch's acts "because it never has been determined before the HRC or any court that any act of sexual discrimination or harassment took place." However, we note that the question of probable cause does not depend on whether Lynch's claims against Hughes ultimately have merit.

¶19 Beyond this, Hughes makes entirely unsupported assertions that the elements of malicious prosecution are met here. This approach, however, is insufficient to withstand a motion for summary judgment. *See* M. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.")

¶20 Accordingly, we conclude that there were no genuine issues of material fact regarding the alleged lack of probable cause for Lynch's acts and, further, that Lynch was entitled to judgment as a matter of law on this claim. We therefore affirm the District Court's order granting summary judgment to Lynch on Hughes's malicious prosecution claim.

10

## The Abuse of Process Claim

¶21 We have stated the elements of an abuse of process claim as follows: "Essential to proof of abuse of process is (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Brault v. Smith*, 209 Mont. 21, 28, 679 P.2d 236, 240 (1984) (citing Prosser, *The Law of Torts* § 121, at 857 (4th ed., West 1971)); *Seltzer v. Morton*, 2007 MT 62, ¶ 57, 336 Mont. 225, ¶ 57, 154 P.3d 561, ¶ 57. Prosser further explains these elements as follows:

> Some definite act or threat not authorized by the process, or aimed at an object not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, but the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

Prosser, *The Law of Torts* § 121, at 857 (footnote omitted). Thus, we explained in *Brault* that "[f]or a defendant to claim abuse of process, there must be an attempt by the plaintiff to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do." *Brault*, 209 Mont. at 29, 679 P.2d at 240.

¶22 In his complaint, Hughes alleged that Lynch used her HRC complaint for the purpose of disrupting Hughes's business relationships and causing irreparable harm to his reputation. In her summary judgment motion, Lynch contended that Hughes's claim was "ludicrous and supported by nothing but speculation on Hughes's part." Lynch pointed out that there was no evidence which suggested that her purpose was "something other

11

than achieving the legal redress to which she was entitled." Therefore, Lynch argued that because Hughes did nothing more than speculate about Lynch's purpose in filing her complaint with the HRC, she was entitled to summary judgment on this issue.

¶23  Hughes claims that Ronco's affidavit, in which Ronco states that Lynch told her that "a lot of money could be made from this," establishes that Lynch "had a profit motive in bringing her claim" and that she was actuated by malice. Hughes, however, misapprehends the meaning of "process." In the context of the abuse of process tort, process may refer to summons, subpoenas, attachments, garnishments, replevin or claim and delivery writs, arrest under a warrant, injunctive orders, and other orders directly affecting obligations of persons or rights in property. *See* Dobbs, *The Law of Torts* § 438, at 1235-36 (West 2001). Some courts also take process to include all the procedures in the litigation process. *See* Dobbs, *The Law of Torts* § 438, at 1236. However, "merely filing a complaint in court does not institute any process." *See* Dobbs, *The Law of Torts* § 438, at 1235.

¶24  Moreover, even assuming, *arguendo*, that Lynch had a profit motive and was actuated by malice, Ronco's affidavit does not bear on the question of whether Lynch actually used process to coerce Hughes to do some collateral thing which he could not be legally and regularly compelled to do. Simply stated, nothing in the record creates a genuine issue of material fact as to whether Lynch committed the tort of abuse of process. We therefore affirm the District Court's order granting summary judgment in favor of Lynch on this claim.

## The Tortious Interference Claim

12

¶25 In order to assert a prima facie claim of tortious interference, the plaintiff must show that the defendant's acts were (1) intentional and willful, (2) calculated to cause damage to the plaintiff in his business, (3) done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor, and (4) that actual damages and loss resulted. *See Com'n on Unauthorized Practice v. O'Neil*, 2006 MT 284, ¶ 47, 334 Mont. 311, ¶ 47, 147 P.3d 200, ¶ 47; *Pospisil v. First Nat. Bank of Lewistown*, 2001 MT 286, ¶ 13, 307 Mont. 392, ¶ 13, 37 P.3d 704, ¶ 13; *Farrington v. Buttrey Food & Drug Stores*, 272 Mont. 140, 143, 900 P.2d 277, 279 (1995).

¶26 In his complaint, Hughes claimed that Lynch tortiously interfered with his contractual and business relationships with St. James, the medical staff of St. James, and current and future patients. In her summary judgment motion, Lynch contended that, based on her arguments concerning the malicious prosecution and the abuse of process claims, Hughes could not prove the first and third elements of tortious interference. With respect to element (2), she maintained that she had filed her complaint with the HRC "to remedy an employment situation which had become intolerable and to be compensated for the related damage done to her." According to Lynch, she did not file her complaint for "the purpose of damaging Hughes's business relationships."

¶27 With respect to element (4), Lynch argued that Hughes could not demonstrate that he had been damaged by her actions. She noted that in 1997, one of Hughes's cancer patients filed a complaint against him with the Montana Board of Medical Examiners. Hughes had drawn a "smiley face" on the patient's breast, which he later explained was an attempt to improve the patient's morale. Hughes ultimately entered into an agreement

13

with the Montana Professional Assistance Program and underwent evaluation for medical, psychiatric, and/or chemical dependency. However, Hughes later sued the Montana Professional Assistance Program for false imprisonment, conspiracy, and a variety of other claims. His suit was eventually dismissed on summary judgment. Hughes also received a written reprimand and was placed on probation by the hospital. (These events are described in greater detail in our decisions in *Hughes v. Pullman*, 2001 MT 216, 306 Mont. 420, 36 P.3d 339 ("*Hughes I*"), and *Hughes v. Montana Bd. of Medical Examiners*, 2003 MT 305, 318 Mont. 181, 80 P.3d 415 ("*Hughes II*").) Given these facts, Lynch essentially argued that any damage suffered by Hughes was the result of his own actions. Therefore, Lynch maintained that she was entitled to summary judgment on Hughes's claim of tortious interference.

¶28 According to the District Court, no facts in the record supported Hughes's contention that Lynch acted intentionally and willfully to cause damage to Hughes. The court also noted that prior to the time that Lynch filed her complaint with the HRC, a complaint had already been filed against Hughes concerning the smiley-face incident. Further, Hughes was already on probation at St. James and he had already agreed to undergo evaluation and treatment for medical, psychiatric, and/or chemical dependency. Therefore, the court opined that "[a]ny damage done to Hughes [sic] reputation, business relationships or business was done by himself prior to Lynch's complaint. Lynch's complaint was simply more evidence of the same type of conduct."

¶29 We agree with the District Court that there is no evidence in the record to suggest that Lynch's acts were calculated to cause damage to Hughes. In this regard, Hughes

14

again directs our attention to the Ronco affidavit; however, whether or not Lynch believed that "a lot of money could be made from this," she still was entitled to seek both redress of and damages for the alleged discrimination. *See* § 49-2-506(b), MCA (stating that the HRC may "require any reasonable measure to correct the discriminatory practice and to rectify any harm, pecuniary or otherwise, to the person discriminated against"). Furthermore, Lynch demonstrated in her summary judgment motion that her filing a complaint against Hughes with the HRC was not done without right or justifiable cause on her part. Lastly, Hughes has failed to counter Lynch's evidence that any damage suffered by Hughes was the result of his own action of drawing a smiley face on the breast of a cancer patient and everything which ensued from that event, as described in *Hughes I* and *Hughes II*. We therefore affirm the District Court's order granting summary judgment to Lynch on Hughes's malicious prosecution claim.

### Hughes's Ability to Exonerate Himself

¶30   Hughes asserts that the record is "absent of any finding by any agency or court that sexual harassment was a proven fact in the relationship between Lynch and Hughes." He maintains that, without a trial, "Lynch will never be able to prove her sexual harassment allegations; nor will Hughes be able to exonerate himself." It is unclear whether Hughes intends this as an alternative basis for resisting Lynch's motion for summary judgment. Regardless, the merits of Lynch's sexual harassment claim are not at issue in this case. Hughes's claims are based on malicious prosecution, abuse of process, and tortious interference. There is no need, in the context of these claims, for Lynch to prove that Hughes is liable to her for sexual harassment or for Hughes to attempt to

15

exonerate himself from a finding of sexual harassment. It appears, therefore, that Hughes simply has misapprehended the nature of his suit against Lynch or would like to use a trial in this case to litigate issues that are outside the purview of his complaint. Either way, this is not a valid basis for withstanding Lynch's motion for summary judgment.

## CONCLUSION

¶31 The appellant bears the burden of establishing that the district court erred. *In re Marriage of McMahon*, 2002 MT 198, ¶ 7, 311 Mont. 175, ¶ 7, 53 P.3d 1266, ¶ 7 (citing *Matter of M.J.W.*, 1998 MT 142, ¶ 18, 289 Mont. 232, ¶ 18, 961 P.2d 105, ¶ 18). Hughes has not met this burden in this case. Lynch, as the party moving for summary judgment, demonstrated the absence of genuine issues of material fact and her entitlement to judgment as a matter of law with respect to all three of Hughes's claims. Hughes failed to meet his burden as the nonmoving party to establish the contrary. The Ronco affidavit simply does not demonstrate that a genuine issue of material fact exists with respect to any of the three claims against Lynch.

¶32 We therefore conclude that the District Court correctly determined that no genuine issue of material fact exists and that Lynch was entitled to judgment as a matter of law. Accordingly, we affirm the District Court's July 21, 2005 order granting Lynch's motion for summary judgment and the court's July 28, 2005 judgment in favor of Lynch.

¶33 Affirmed.

/S/ JAMES C. NELSON

16

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE